Gary Mal AUSTIN, Petitioner-Appellant,

v.

Dan V. McKASKLE, Acting Director, Texas Department of Corrections, Respondent-Appellee.

No. 82–1418.

United States Court of Appeals, Fifth Circuit.

Feb. 13, 1984.

---

Kirk Preston Watson, Austin, Tex. (Court-appointed), for petitioner-appellant.

Paula C. Offenhauser, Asst. Atty. Gen., Austin, Tex., for respondent-appellee.

Before CLARK, Chief Judge, GEE and POLITZ, Circuit Judges.

POLITZ, Circuit Judge:

Finding a serious allegation of a violation of the express mandate of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), we reverse the district court and remand this 28 U.S.C. § 2254 proceeding for an evidentiary hearing to develop essential facts.

### Facts & Procedural Background

Gary Mal Austin and Henry Stiehl entered a supermarket in Lubbock, Texas on January 26, 1976, wearing masks and wielding rifles. They took cash from the registers and safe, and were in the process of forcing the supermarket's customers into a back room when the police arrived. Austin and Stiehl dropped their ill-gotten gains and fled the scene by auto, taking two store clerks as hostages. After a high-speed chase, the police rammed the escape vehicle and arrested the robbers. The hostages were not hurt.

Austin and Stiehl were indicted for aggravated robbery. Stiehl was tried, convicted, and sentenced by a jury to 40 years imprisonment. Austin pled guilty but elected to have a jury determine his sentence, an option made possible by the Texas system of bifurcating a criminal trial into separate guilt and punishment phases. Aggravated robbery in Texas carries a penalty of five years to life.

During the sentencing trial the prosecution offered evidence of several threatening, violent acts that allegedly were committed by Austin. One police officer testified that the robber in the front passenger seat of the getaway vehicle pointed a rifle at him and threatened to kill him unless he turned off a spotlight illuminating the robbers' auto. A second officer told how the gunman in the passenger seat raised and aimed his rifle at the officer as he blocked the getaway car to prevent the robbers' escape. This officer testified that he avoided being shot by ramming the vehicle. One of the hostages testified that the gunman in the front passenger seat pointed his rifle at the two hostages during the vehicular chase and threatened "to blow a couple of caps." Two witnesses identified Austin as the gunman in the front passenger seat. Austin testified that he was the driver.

In closing argument, the prosecutor urged the members of the jury to consider the testimony about Austin's threatening acts as aggravating factors relevant to their determination of Austin's sentence. The prosecutor reminded the jury of the testimony of the police officers and the hostages, and argued that Austin was the perpetrator of these damning acts. The jury imposed a life sentence.

The Texas Court of Criminal Appeals affirmed the conviction and sentence on direct appeal. *Austin v. State,* 565 S.W.2d 72 (Tex.Cr.App.1978). Years passed. According to Austin, he learned four years after trial of the existence of police records relating to the night of his arrest. He secured copies. The records identified the driver of the getaway car as Robert James Mathews, an alias used by Austin, and thus corroborated Austin's testimony that he was the driver rather than the passenger of the getaway car. Austin contends that he neither knew of nor had access to these records at the time of trial notwithstanding the fact that his attorney had filed a pretrial *Brady* motion.

Since the time of his alleged discovery of the police records, Austin has twice sought habeas relief in state court. In his first state habeas petition, Austin claimed that his federal due process rights had been violated by the withholding of favorable, material evidence. Austin attached the police records to his petition. The state trial court and the Texas Court of Criminal Appeals denied Austin's petition without a hearing and without a written order.

Austin's second state application alleged that the prosecution presented a false picture to the jury by knowingly using perjured testimony and by failing to correct that testimony when its falseness became apparent. The trial court again denied Austin's petition without holding a hearing. In dismissing Austin's assertion that the prosecution had violated his constitutional rights by suppressing the police records, the state trial court opined that Austin must have known about the records at the time of trial because he had attached them to his first state habeas petition. That habeas petition was filed more than four years after the trial. The state appellate court affirmed without written order.

Austin then filed the instant federal habeas petition alleging, *inter alia,*[1] that the prosecution had violated his federal constitutional right to due process by withholding favorable evidence that was relevant to the jury's determination of his sentence and by failing to correct false testimony that it knew or should have known was false. The matter was referred to a magistrate. Without holding an evidentiary hearing, the magistrate agreed with the state court's conclusion that Austin had possession of the

---

1. Austin also alleged that his guilty plea was not knowingly and voluntarily entered and that he was denied effective assistance of counsel. We find no merit in these contentions.

police records at the time of trial and recommended that his federal habeas petition be denied. The district court accepted the magistrate's recommendation and then denied Austin's request for a certificate of probable cause. We granted a certificate of probable cause.

*Analysis*

■ There need be scant reminder at this late date of the mandate of *Brady v. Maryland.* The prosecution must turn over to the defendant upon demand all material, exculpatory evidence that is in its possession or available to it. Suppression of favorable, material evidence violates the accused's constitutional right to a fair trial. The suppression envisioned includes the situation in which "the State, although not soliciting false evidence, allows it to go uncorrected when it appears." *Brady v. Maryland,* 373 U.S. at 87, 83 S.Ct. at 1196, *quoting Napue v. Illinois,* 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959). To establish a *Brady* violation a petitioner must prove the suppression of favorable, material evidence. *Ogle v. Estelle,* 641 F.2d 1122 (5th Cir.1981).

■ Austin claims that the district court erred in denying his habeas application without holding an evidentiary hearing. We agree. In *Townsend v. Sain,* 372 U.S. 293, 312–13, 83 S.Ct. 745, 756–57, 9 L.Ed.2d 770 (1963), the Supreme Court stated:

> Where the facts are in dispute, the federal court in habeas corpus *must* hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing in a state court, either at the time of the trial or in a collateral proceeding. In other words a federal evidentiary hearing is required unless the state-court trier of fact *has after a full hearing reliably found the relevant facts.*

(Emphasis added.) Similarly, the federal habeas court must conduct an evidentiary hearing if "the state factual determination is not fairly supported by the record as a whole." *Id.* at 313, 83 S.Ct. at 757.

■ Austin has not had an evidentiary hearing on his federal constitutional claims before either the state or federal habeas court. Such a hearing is needed to determine whether the records were suppressed or withheld by the prosecution despite the pendency of Austin's *Brady* request,[2] whether the prosecution failed to correct what it knew or should have known to be false or incorrect testimony of the witnesses who identified Austin as the passenger of the getaway car, and the actual time that the records came into Austin's possession. *See United States v. Auten,* 632 F.2d 478 (5th Cir.1980).

If the records were in fact suppressed, then all elements of the *Brady* test are satisfied. It is apparent that the evidence contained in the records was favorable, since the records stated that Austin was the driver rather than the passenger. The threatening acts offered as aggravating factors were all committed by the passenger. And it is also apparent that the records were material within the meaning of *Brady* because there is a "reasonable likelihood" that the false testimony accusing Austin of committing several threatening acts would "have affected the judgment of the jury." *United States v. Antone,* 603 F.2d 566, 569 (5th Cir.1979).

We therefore reverse the judgment of the district court and remand the matter for an evidentiary hearing. We do so echoing the teachings of *Brady v. Maryland* that "society wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly." 373 U.S. at 87, 83 S.Ct. at 1196.

REVERSED and REMANDED.

---

2. Respondent argues that the prosecution did not know that the police records related to Austin because it was confused by his alias. We are not persuaded. That Austin and Robert James Mathews were one and the same was readily ascertainable information. We have

held that "the deception which results from negligent nondisclosure is no less damaging than that deception which is a product of guile, and such negligent nondisclosure entitles a defendant to relief." *Martinez v. Wainwright,* 621 F.2d 184, 187–88 (5th Cir.1980).