Gary Mal AUSTIN, Petitioner-Appellant,

v.

Lane McCOTTER, Director, Texas
Department of Corrections,
Respondent-Appellee.

No. 84–1643.
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

July 8, 1985.

Gary Mal Austin, pro se.

Jim Mattox, Atty. Gen., Paula C. Offenhauser, Austin, Tex., for respondent-appellee.

Before REAVLEY, POLITZ and HIGGINBOTHAM, Circuit Judges.

POLITZ, Circuit Judge:

Once again we review the dismissal of Gary Mal Austin's petition for federal habeas, 28 U.S.C. § 2254. We earlier remanded for an evidentiary hearing on a *Brady* claim, *Austin v. McKaskle*, 724 F.2d 1153 (5th Cir.1984). Reviewing this remand record against the backdrop of the state record, we find no merit in the *Brady* assignment; nor do we perceive any validity to a potential ineffective-assistance-of-counsel claim. Accordingly, we modify the district court's judgment to provide for dismissal with prejudice on both the *Brady*

issue and the ineffective assistance issue and, as modified, affirm.

### Facts

Austin and Henry Stiehl were charged with aggravated robbery of a supermarket in Lubbock, Texas, during which they wore masks and waved rifles. Austin pleaded guilty but chose to be sentenced by a jury. During the trial the prosecutor offered evidence to show that the robber riding in the passenger seat, identified as Austin, made several violent and threatening gestures toward pursuing police officers and similar gestures and comments to two hostages taken during the escape attempt. An officer and a hostage both said Austin was the robber in the passenger seat, but Austin insisted he was the driver. During closing arguments the prosecutor urged the jury to consider the threatening gestures and comments by the passenger-robber as aggravating factors in assessing Austin's sentence.

Years after his conviction was affirmed by Texas' highest criminal court, 565 S.W.2d 72 (Tex.Crim.App.1978), Austin claimed to have discovered evidence showing that the prosecutor had withheld proof that Austin was actually the driver. This evidence was in the form of a fingerprint card showing that Robert Mathews was an alias used by Austin and that a citation had issued and a fingerprint card had been prepared showing that Mathews was the driver of the getaway vehicle.

On appeal to this court after a denial of federal habeas relief based on review of the state record alone, we remanded for an evidentiary hearing on the *Brady* issue. We found no merit in any other issue raised, including an ineffective-assistance-of-counsel claim.

On remand the magistrate conducted a hearing at which Austin, the prosecutor, and Austin's defense counsel at the state trial all testified. The magistrate found that Austin's defense counsel had had access to the file of the district attorney before the trial and had been given all *Brady* material at least by the time of cross-examination of relevant witnesses. The magistrate noted that Austin's only plausible argument related to the ineffective assistance claim. He recommended that Austin's petition be dismissed without prejudice to Austin's bringing another habeas petition raising that sixth amendment claim. The district court adopted the magistrate's recommendations.

The evidence developed at the evidentiary hearing after remand, against the background of the state sentencing trial, establishes that Austin and Stiehl, men of similar age and size, were both wearing face masks, toboggan caps, and sweaters at the time of the robbery and when they were arrested. When apprehended after a high-speed chase, the driver gave an alias, identifying himself as Robert James Mathews. The passenger said he was Robert Lynn Shafer. The police records contain a card bearing a set of fingerprints and the signatures of Austin and Robert Mathews. The handwriting is similar; Austin says both signatures are his. This card identifies Mathews as the driver. Austin maintained that the prosecution never disclosed this evidence to his counsel.

The record of the evidentiary hearing supports the magistrate's findings that Austin's counsel was fully aware of the existence of the police reports and their contents, including the fingerprint card, and that at the time of cross-examination he had those papers in his possession. The evidence also establishes that there was a great deal of confusion at the time of the arrest, confusion which Austin's defense counsel appropriately sought to capitalize on, but we find no evidence of false testimony; nor do we find proof of any attempt to offer perjured testimony.

■ At the evidentiary hearing, Austin's trial attorney made abundantly clear that he had had access to the police reports, including the much-touted fingerprint card, at the time of trial, but that he had made a strategic decision not to use them. Counsel's comments set forth that decision and his reasons for choosing that trial strategy:

They did not give me the actual pieces of paper, they were read to me, I did recall and I do recall the business about the aliases and about Matthews and Shafer, and one of the reasons I remember that is that even though this was an aggravated case and it might not have made any difference, I didn't want to bring up anything about the use of an alias because I thought the use of an alias, itself, was an aggravating circumstance. I knew it was going to come out at the trial and would probably be an issue, but I did not want to go into it myself, but to avoid it if possible, and I was aware of the use of aliases in the reports when we went to trial. Now, as to when I actually had the pieces of paper, I am certain in my own mind that I had the offense report available to me for cross-examination in the courtroom. I feel—knowing that this case is tried under Alton Griffin's administration, I feel positive that I did not have a photographic copy of it prior to trial but only at the time the witness was passed, but I knew about the contents all along....

Okay. That will require me to answer about three separate things, but the first answer is, first, I have no recollection of having fingerprints available to me in my file. The second answer is, [as appointed] counsel, I had no one available to me in the way of a private fingerprint examiner to match up the latent prints or the—pardon me—the known prints on the fingerprint card at the Sheriff's office with my client's prints. The other thing was I am not sure that I would want to do that and further tie up the state's case with so much certainty. The other thing was Mr. Aimesworth [one of the hostages] was a particularly pathetic witness and one that the jury would certainly sympathize with. I felt that I could not help Gary by vigorously cross-examining Aimesworth. I thought it would merely evoke the jury's sympathy for the victim more than it was. It would appear to me, aggravated, would merely inflame the jury. This was a case where less was more, I could not

have helped Gary by pounding, ad infinitum, about these fingerprints or these aliases in front of the jury. It had to be very, very limited and I had to be as courteous as I possibly could with Mr. Aimesworth and not do anything to incur further sympathy for him.

As far as cross-examination of the officers was concerned, there was very little to be gained on that, the only purpose, really, is impeaching their credibility, based upon their opportunity to observe and recall what happened that day under the excited circumstances. There would have been nothing to be gained by trying to impeach their truth or voracity [sic].

The other thing was that the facts are so clear and the witnesses there were eyeball witnesses to the offense and regardless of the position of the driver or the passenger, there was going to be a victory [sic] of guilty under parties [sic] charge, the only question was sentence, and while their confusion about the source of these aggravated comments might have made some difference, I felt like I wasn't making any headway, to speak of, with these officers and I could best rebut them with Gary's direct testimony when he took the witness stand.

This testimony makes manifest that Austin's attorney had the information and made a knowing decision not to use it. Thus the district court was correct in finding no *Brady* violation.

 The magistrate concluded that the only possible basis for habeas relief might be a claim of ineffective assistance of counsel. With the benefit of hindsight and its unerring superb visual acuity, one might suggest that the trial strategy chosen by Austin's appointed counsel left much to be desired. The magistrate and the district court were inclined to preserve this issue for subsequent review. With this we do not agree. The pertinent facts are of record; the recent pronouncements and teachings by the Supreme Court leave little room for uncertainty as to the law. Strategic choices made on a reasoned basis, after adequate investigation, are not grist for an

ineffectiveness claim. *Strickland v. Washington,* —— U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Austin cannot establish an ineffectiveness claim under the demanding *Strickland v. Washington* standard. It would be futile to invite, encourage, or permit further proceedings on this issue.

Accordingly, we modify the district court's dismissal to the end that all claims are dismissed with prejudice, and as so modified, AFFIRM. The matter is returned to the district court for entry of an appropriate judgment.