## MARK DEMERS ET AL. *v.* STATE OF CONNECTICUT (13336)

PETERS, C. J., SHEA, CALLAHAN, COVELLO and HULL, Js.

Argued May 31—decision released September 13, 1988

*Edward T. Ricciardi,* assistant state's attorney, with whom, on the brief, was *John A. Connelly,* state's attorney, for the appellant (respondent).

*Todd D. Fernow,* with whom was *Charles E. Oman III,* for the appellees (petitioners).

CALLAHAN, J. The state has filed the instant appeal from a judgment of the trial court granting the petition of Mark Demers and William J. Corcoran, Jr., for a new trial pursuant to General Statutes § 52-270[1] and Practice Book § 902.[2] In a joint trial, Demers and Corcoran previously had been convicted of sexual assault in the first degree in violation of General Statutes § 53a-70 (a), robbery in the second degree in violation of General Statutes § 53a-135 (a), and unlawful restraint in the first degree in violation of General Stat-

---

[1] General Statutes § 52-270 (a) provides: "CAUSES FOR WHICH NEW TRIALS MAY BE GRANTED. (a) The superior court may grant a new trial of any action that may come before it, for mispleading, the discovery of new evidence or want of actual notice of the action to any defendant or of a reasonable opportunity to appear and defend, when a just defense in whole or part existed, or the want of actual notice to any plaintiff of the entry of a nonsuit for failure to appear at trial or dismissal for failure to prosecute with reasonable diligence, or for other reasonable cause, according to the usual rules in such cases. The judges of the superior court may in addition provide by rule for the granting of new trials upon prompt request in cases where the parties or their counsel have not adequately protected their rights during the original trial of an action."

[2] "[Practice Book] Sec. 902. [MOTION FOR A NEW TRIAL]— —IN GENERAL

"Upon motion of the defendant, the judicial authority may grant him a new trial if it is required in the interests of justice. Unless the defendant's noncompliance with these rules or with other requirements of law bars his asserting the error, the judicial authority shall grant the motion:

"(1) For an error by reason of which the defendant is constitutionally entitled to a new trial; or

"(2) For any other error which the defendant can establish was materially injurious to him.

"If the trial was by the court and without a jury, the judicial authority, with the defendant's consent and instead of granting a new trial, may vacate any judgment entered, receive additional evidence, and direct the entry of a new judgment."

utes § 53a-95 (a).[3] In ruling on the petition, the trial court found that the state had failed to disclose to the petitioners, at or prior to their trial, the existence of exculpatory information concerning the victim's prior arrest for prostitution contained in a Waterbury police department report. The trial court determined that, upon reasonable inquiry, the state should have discovered the information in the report and should have disclosed it to the petitioners, and that the information would have had a "significant impact on the credibility of [the alleged victim] for it directly controverted her sworn testimony that she was not a 'hooker' and had never participated in sex for money." As a result of its findings, the trial court granted the petition for a new trial. Thereafter, the state filed the instant appeal in the Appellate Court. The appeal was transferred to this court pursuant to Practice Book § 4023.

The principal issue on appeal is whether the trial court abused its discretion in granting the petition for a new trial. The state argues that it did because the trial court erred in basing its conclusion that the peti-

---

[3] General Statutes § 53a-70 (a) provides: "SEXUAL ASSAULT IN THE FIRST DEGREE: CLASS B FELONY: ONE YEAR NOT SUSPENDABLE. (a) A person is guilty of sexual assault in the first degree when such person compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person."

General Statutes § 53a-135 (a) provides: "ROBBERY IN THE SECOND DEGREE: CLASS C FELONY. (a) A person is guilty of robbery in the second degree when he commits robbery and (1) he is aided by another person actually present; or (2) in the course of the commission of the crime or of immediate flight therefrom he or another participant in the crime displays or threatens the use of what he represents by his words or conduct to be a deadly weapon or a dangerous instrument."

General Statutes § 53a-95 (a) provides: "UNLAWFUL RESTRAINT IN THE FIRST DEGREE: CLASS D FELONY. (a) A person is guilty of unlawful restraint in the first degree when he restrains another person under circumstances which expose the latter to a substantial risk of physical injury."

tion should be granted on the finding of a *Brady-Agurs* violation. The state claims that there was no *Brady-Agurs* violation because: the information regarding the victim's prior arrest for prostitution was not suppressed, but rather was known to or should have been discovered by the petitioners themselves prior to trial; the information was not admissible evidence and was neither exculpatory nor material; and the information was also inadmissible as evidence of sexual assault in the first degree because it was barred by Connecticut's rape shield statute, General Statutes § 54-86f.[4] We find no error.

Prior to addressing the substantive issues of this appeal, it is first necessary to summarize briefly the state's version and the petitioners' version of the events of March 13, 1982, which led to the arrest and con-

---

[4] General Statutes § 54-86f provides: "ADMISSIBILITY OF EVIDENCE OF SEXUAL CONDUCT. In any prosecution for sexual assault under sections 53a-70, 53a-70a, and 53a-71 to 53a-73a, inclusive, no evidence of the sexual conduct of the victim may be admissible unless such evidence is (1) offered by the defendant on the issue of whether the defendant was, with respect to the victim, the source of semen, disease, pregnancy or injury, or (2) offered by the defendant on the issue of credibility of the victim, provided the victim has testified on direct examination as to his or her sexual conduct, or (3) any evidence of sexual conduct with the defendant offered by the defendant on the issue of consent by the victim, when consent is raised as a defense by the defendant, or (4) otherwise so relevant and material to a critical issue in the case that excluding it would violate the defendant's constitutional rights. Such evidence shall be admissible only after a hearing on a motion to offer such evidence containing an offer of proof. On motion of either party the court may order such hearing held in camera, subject to the provisions of section 51-164x. If the proceeding is a trial with a jury, such hearing shall be held in the absence of the jury. If, after hearing, the court finds that the evidence meets the requirements of this section and that the probative value of the evidence outweighs its prejudicial effect on the victim, the court may grant the motion. The testimony of the defendant during a hearing on a motion to offer evidence under this section may not be used against the defendant during the trial if such motion is denied, except that such testimony may be admissible to impeach the credibility of the defendant if the defendant elects to testify as part of the defense."

viction of the petitioners.[5] At trial, the victim of the petitioners' alleged criminal conduct testified to the following. At approximately 2:50 a.m. on March 13, 1982, she was walking on North Main Street in Waterbury hitchhiking to the Berkeley Heights housing project to buy narcotics when a car containing the petitioners stopped next to her. The petitioners asked the victim if she knew where they could get marihuana and she indicated that they could probably get some up at Berkeley Heights. The petitioners then offered the victim a ride to her destination. Initially, she accepted but then reneged upon realizing that she would have to sit in the back seat of the two-door car or between the two men. When, however, Demers agreed to go to the back seat, the victim entered the car. After the victim entered the car, the petitioners, without informing the victim, deviated from her stated destination and drove to a parking lot next to a building known as the "Ponte Club." While en route, the petitioners told the victim that they wanted to party and requested that she perform oral sex for which they promised to pay her. The victim responded by informing the petitioners that she was forty years old and was not a "party girl" or a "hooker." The petitioners, however, forced the victim to engage in oral sex with both of them and to engage in vaginal intercourse with Corcoran, after which she was punched in the face by Corcoran and robbed of her money. The victim subsequently managed to escape and hide in nearby woods until the petitioners drove away. She then ran to a house close by to seek help. There

---

[5] For purposes of ruling upon the petitioners' General Statutes § 52-270 petition for new trial, the parties stipulated on the record in open court to incorporate into this record the evidence and testimony adduced at the criminal trial, the testimony of the posttrial evidentiary hearing, i.e., October 15, 1985, and the respective pleadings and briefs from the criminal proceedings. The petition for a new trial was heard and decided by the same judge who had presided over the criminal trial.

she was admitted by the woman of the house who called the police after being told by the victim that she had just been raped.

In their testimony at trial, the petitioners recited a significantly different version of what had occurred on March 13, 1982. Both testified that while stopped at a traffic light at the corner of North Elm Street, Cherry Street and the North Square, the victim approached their car and propositioned them, soliciting $15 for oral sex and $20 for intercourse. In response to the victim's proposition, the petitioners claim that each gave her $15, that she got into their car and that she directed them to the parking area at the "Ponte Club." Upon arriving at the parking area, Demers exited the vehicle and the victim proceeded to engage in oral and vaginal intercourse with Corcoran. Thereafter Corcoran exited the car, Demers entered and the victim performed oral sex upon him. The victim then exited the car and engaged in an argument with Corcoran about giving her a ride back to North Main Street. Subsequently, the petitioners drove off, leaving the victim in the parking lot. As they drove away, Demers noticed the victim's pocketbook on the floor in the front of the automobile and threw it out the window.

At the outset, we note that a petition for a new trial is addressed to the discretion of the trial court whose decision thereon will be set aside on appeal only if it reflects a clear abuse of discretion. *Wetzel* v. *Thorne,* 202 Conn. 561, 564–65, 522 A.2d 288 (1987); *Asherman* v. *State,* 202 Conn. 429, 434, 521 A.2d 578 (1987). In deciding upon a petition for a new trial, the function of the trial court is to determine whether the evidence presented at the hearing on the petition together with the evidence presented at the original trial warrants the granting of the petition. *Kubeck* v. *Foremost Foods Co.,* 190 Conn. 667, 669, 461 A.2d 1380 (1983). " 'The basic question which the trial court has to decide is

whether upon all the evidence an injustice had been done'; *Turner* v. *Scanlon,* 146 Conn. 149, 163, 148 A.2d 334 (1959); and 'whether it is probable that on a new trial a different result would be reached.' *Taborsky* v. *State,* 142 Conn. 619, 623, 116 A.2d 433 (1955)." *Kubeck* v. *Foremost Foods Co.,* supra; see also *Johnson* v. *State,* 172 Conn. 16, 17, 372 A.2d 138 (1976).

In the case at hand, the trial court granted the petition for a new trial on the ground that the state failed to disclose exculpatory material about which it should reasonably have known, and which it should have disclosed, and thereby violated the principles set forth in *United States* v. *Agurs,* 427 U.S. 97, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976). The material that the trial court found that the state failed to disclose was the contents of a May, 1981 arrest report of Sergeant Jeremiah Wallace of the Waterbury police department. The arrest report set forth the factual circumstances underlying the victim's arrest on a charge of prostitution on May 5, 1981, only ten months prior to the incident at issue here.

The state first claims that the principles of *Brady* v. *Maryland,* 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), and *United States* v. *Agurs,* supra, do not apply in this case because the information was known by the petitioners prior to trial and available to them during trial, and it further claims that the information was neither material nor exculpatory in nature. We disagree.

It is well established that " ' "suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." [*Brady* v. *Maryland,* supra, 87] . . . .' " *State* v. *Monteeth,* 208 Conn. 202, 213, 544 A.2d 1199 (1988); *State* v. *Doolittle,* 189

Conn. 183, 196, 455 A.2d 843 (1983); see also *Moore v. Illinois,* 408 U.S. 786, 92 S. Ct. 2562, 33 L. Ed. 2d 706, reh. denied, 409 U.S. 897, 93 S. Ct. 87, 34 L. Ed. 2d 155 (1972); *State v. Quintana,* 209 Conn. 34, 547 A.2d 534 (1988); *State v. Green,* 194 Conn. 258, 263, 480 A.2d 526 (1984), cert. denied, 469 U.S. 1191, 105 S. Ct. 964, 83 L. Ed. 2d 969 (1985). To establish a *Brady* violation the defendant bears the burden of demonstrating: "(1) that the prosecution suppressed evidence; (2) that the evidence was favorable to the defense; and (3) that it was material." *State v. Milner,* 206 Conn. 512, 539–40, 539 A.2d 80 (1988); *State v. Simms,* 201 Conn. 395, 405–406, 518 A.2d 35 (1986).

## I

We must first determine whether there was a "suppression" of evidence, within the meaning of *Brady.* The state claims that the evidence was either available to or known by the petitioners prior to trial, and was also available to them during the trial and, therefore, was not suppressed. This claim involves two interrelated questions. First, did the state have a duty to disclose the arrest report of Sergeant Wallace dated May 5, 1981? Second, was the information in the arrest report, although not disclosed, nevertheless, available to or known by the petitioners? To the first question, our answer is in the affirmative and to the second question, in the negative.

## A

The prosecution's duty to disclose applies to all material and exculpatory evidence that is within its possession or *available to it; Pennsylvania v. Ritchie,* 480 U.S. 39, 57, 107 S. Ct. 989, 94 L. Ed. 2d 40 (1987); *Moore v. Kemp,* 809 F.2d 702, 719 (11th Cir.), cert. denied, 481 U.S. 1054, 107 S. Ct. 2192, 95 L. Ed. 2d 847 (1987); *Austin v. McKaskle,* 724 F.2d 1153, 1156 (5th Cir. 1984), modified on appeal after remand, 764 F.2d 1142

(5th Cir. 1985); *Fulford* v. *Maggio,* 692 F.2d 354, 357 (5th Cir. 1982), rev'd on other grounds, 462 U.S. 111, 103 S. Ct. 2261, 76 L. Ed. 2d 794, reh. denied, 463 U.S. 1236, 104 S. Ct. 29, 77 L. Ed. 2d 1451 (1983); and that the prosecution knew or should have known was exculpatory. *United States* v. *Bibby,* 752 F.2d 1116, 1125 (6th Cir. 1985), cert. denied, 475 U.S. 1010, 106 S. Ct. 1183, 89 L. Ed. 2d 300 (1986); see also General Statutes § 54-86c (a). "It is irrelevant whether the State [i.e., the prosecutor,] acted in good faith or bad faith in failing to disclose the evidence; negligent suppression may be sufficient." *Walker* v. *Lockhart,* 763 F.2d 942, 957 (8th Cir. 1985), cert. denied, 478 U.S. 1020, 106 S. Ct. 3332, 92 L. Ed. 2d 738 (1986), citing *Brady* v. *Maryland,* supra. Where "evidence highly probative of [a defendant's] innocence is in [the prosecutor's] file, he should be presumed to recognize its significance even if he has actually overlooked it"; *United States* v. *Agurs,* supra, 110; and he is put on notice to disclose the evidence even in the absence of a request to do so. Id., 107; see also *State* v. *Baker,* 195 Conn. 598, 609 n.10, 489 A.2d 1041 (1985).

Upon a careful review of the extensive record extant in this case, we conclude that the trial court did not abuse its discretion in determining that the state had an obligation to recognize as exculpatory and to disclose the information contained in the police arrest report because the state "should have known" of this information and its significance.

The state's attorney's office in Waterbury was well aware of the fact that the petitioners' defense to the sexual assault charges against them, from the very inception of the case, was that the victim was a prostitute and had consented to the sexual acts alleged in return for payment. James Caulfield, counsel for the petitioners at the time of the criminal trial, repeatedly told various members of the state's attorney's office

that he had received information from the Waterbury police department, residents of the Grove Street area, and an assistant state's attorney that the victim was a known drug user and a prostitute. Caulfield also continuously urged the state's attorney's office to contact the detective bureau or the vice squad of the Waterbury police department to verify this information. In addition, Caulfield informed the assistant state's attorney handling the case about an index card he had located in the records of the clerk's office at the Waterbury Superior Court, geographical area number four, which indicated that the victim had been arrested for prostitution in May, 1981, and that the state had filed a substitute information charging her with disorderly conduct. Caulfield also informed the state that he was unable to determine the circumstances of the victim's prostitution arrest or whether it ever had been disposed of and asked the assistant state's attorney to check on it.[6]

Despite Caulfield's claims that the victim was a known prostitute, and that there existed a record of her arrest for prostitution, and despite Caulfield's repeated requests that the assistant state's attorney handling the case call the Waterbury police department to verify this information, the state never placed a phone call. The state's only apparent response to the information they received from Caulfield was to ask the victim directly if she was a prostitute and to review its file for any prior *convictions* for prostitution. The

---

[6] The card did not reveal the details surrounding the arrest for prostitution nor did it clearly reflect a specific disposition of these charges. In addition, at oral argument before this court on May 31, 1988, the petitioners' counsel represented that the criminal charges against the victim that arose from her arrest in May, 1981, had yet to result in a final disposition. He further represented that the victim's *Alford* plea to a charge of disorderly conduct had been vacated subject to the victim paying costs and that, apparently, she had yet to do so. *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

record clearly establishes that, had a cursory investigation been conducted, the arrest report in question was "easily available" to the state and that a routine telephone call to the detective bureau or vice squad to check the victim's background would have revealed the report and the circumstances of the victim's prostitution arrest. The assistant state's attorney who tried the case, however, admitted that he did nothing to investigate the circumstances surrounding the victim's prior arrest. In fact, it appears that he never asked the victim about her May, 1981 arrest for prostitution when he inquired whether she had been a prostitute. Moreover, he subsequently acknowledged that the information in the arrest report in question was "potentially exculpatory" and that, in retrospect, had he known of it, he would have turned it over to the petitioners.

It should also be noted that the fact that the arrest report was in the possession of the Waterbury police department and not of the state's attorney does not detract from the state's duty to have disclosed it in this case. "Police are treated as an arm of the prosecution for *Brady* purposes, 'and the taint on the trial is no less if they, rather than the state's attorney, were guilty of the nondisclosure.' " *Walker* v. *Lockhart,* supra, 958; see also *Barbee* v. *Warden,* 331 F.2d 842, 846 (4th Cir. 1964). "The State's duty of disclosure is imposed not only upon its prosecutor, but also on the State as a whole, including its investigative agencies. Therefore, if the [exculpatory materials] were held by the . . . police department we would be compelled to conclude that, constructively, the State's attorney had both access to and control over the documents. See *United States* v. *Bryant,* 142 D.C. App. 132, 439 F.2d 642 [D.C. Cir.], on remand, 331 F. Supp. 927 [D.D.C.], aff'd, 145 D.C. App. 259, 448 F.2d 1182 ([D.C. Cir.] 1971); *United States* v. *Jensen,* 608 F.2d 1349 (10th Cir. 1979)." *Ful-*

*ford* v. *Maggio,* supra, 358 n.2; see also *United States ex rel. Smith* v. *Fairman,* 769 F.2d 386, 391–92 (7th Cir. 1985); *Walker* v. *Lockhart,* supra; *Carey* v. *Duckworth,* 738 F.2d 875, 878 (7th Cir. 1984); *United States* v. *Esposito,* 523 F.2d 242, 248 (7th Cir. 1975), cert. denied, 425 U.S. 916, 96 S. Ct. 1517, 47 L. Ed. 2d 768 (1976).

We conclude, therefore, that the trial court did not abuse its discretion when it determined that the state had access to the arrest report of Sergeant Wallace concerning the victim's prostitution arrest, and a duty to disclose it.

B

The state also argues that it had no duty to disclose the arrest report in question because the information contained in it was available to and in fact known by the petitioners. This court has previously held that " '[e]vidence known to the defendant or his counsel, or that is disclosed, even if during trial, is not considered suppressed as that term is used in *Brady.'* *State* v. *Dolphin,* [195 Conn. 444, 455–56, 488 A.2d 812, cert. denied, 474 U.S. 833, 106 S. Ct. 103, 88 L. Ed. 2d 84 (1985)]; *State* v. *Altrui,* 188 Conn. 161, 177, 448 A.2d 837 (1982)." *State* v. *Simms,* supra, 407. The record in this case, however, indicates that the petitioners had no knowledge of the existence of Wallace's arrest report until almost two and one-half years after the conclusion of their criminal trial. The record further reveals that, in the absence of specific knowledge of its existence, it is speculative at best to assume that Caulfield should or would have been able to discover the existence of the report and its contents on his own. Officer John Cavanaugh of the records division of the Waterbury police department testified at the posttrial

hearing on the petitioners' motion for a new trial[7] that he was able to retrieve the arrest report from the microfilm records only after receiving the internally assigned file and complaint numbers which enabled him to cross reference the report to the name of the arrested person. There is no dispute that the petitioners' trial counsel never received the internally assigned file and complaint numbers on any of the documents provided him by the state, nor did he come across them during his investigation. In addition, Wallace testified that had Caulfield inquired of him regarding the victim's arrest, he would not have given him any information or discussed the matter but would have referred him to the state's attorney's office. He further stated that even if the case arising from the victim's arrest had not still been pending, "I don't think I would have said anything."

Caulfield further testified that none of the Waterbury police officers from whom he had obtained his initial information would come forward to testify and that each of them had indicated that they would deny ever having spoken with Caulfield regarding the victim. Caulfield also testified that he was unable to determine whether the victim's arrest for prostitution had ever

[7] On September 6, 1985, and October 3, 1985, respectively, Demers and Corcoran filed *motions* for a new trial after having discovered the existence and content of the police arrest report of Sergeant Wallace. A joint evidentiary hearing was held on the motions on October 14, 1985. In a written memorandum of decision dated December 6, 1985, the trial court, *J. Healey, J.*, denied the motions on the ground that the court lacked jurisdiction to grant the motions given the pending appeals to the Supreme Court. Thereafter, the petitioners filed motions for reconsideration and for findings of essential facts. In a written memorandum of decision dated March 24, 1986, the trial court again denied that it had jurisdiction to grant the petitioners' motions. Nevertheless, the court went on to make various findings of fact to obviate the need for a remand in the event this court determined in the pending appeals that the trial court had jurisdiction to grant the motions for "new trial." Subsequently, on May 7, 1986, the petitioners filed the instant petition for a new trial.

been disposed of and that, from his past experiences, the Waterbury police department would not discuss a pending matter. Under such circumstances, we conclude that the trial court did not abuse its discretion in finding that the information contained within Wallace's arrest report was neither known to nor reasonably available to the petitioners before or during trial simply because Caulfield was aware of the victim's prior arrest.

## II

The state next claims that circumstances underlying the victim's arrest for prostitution are neither exculpatory nor material because the information is "inadmissible and collateral [to] any of the three separate counts of which the [petitioners] were convicted." Specifically, the state argues that the alleged acts of prostitution set forth in the police report were not relevant to the credibility of the victim and, therefore, were not admissible in this case. In addition, the state argues that evidence of the prior sexual history of the victim is inadmissible under General Statutes § 54-86f, Connecticut's rape shield statute. We disagree.

"It is beyond dispute that a witness may be impeached by evidence of specific acts of misconduct which relate to veracity, but not by those that merely illustrate general bad behavior. *State* v. *Martin,* 201 Conn. 74, 85–86, 513 A.2d 116 (1986); *State* v. *Roma,* 199 Conn. 110, 116–17, 505 A.2d 717 (1986); *Martyn* v. *Donlin,* 151 Conn. 402, 408, 198 A.2d 700 (1964); *Vogel* v. *Sylvester,* 148 Conn. 666, 675, 174 A.2d 122 (1961); C. Tait & J. LaPlante, Connecticut Evidence § 7.22a." *State* v. *McIntosh,* 12 Conn. App. 179, 183, 530 A.2d 191, cert. denied, 205 Conn. 808, 532 A.2d 77 (1987). It is also generally held that a witness' reputation for being unchaste or a prostitute, or her prior acts of sexual misconduct are not, in and of themselves, relevant to her

credibility or veracity as a witness. *State* v. *Brown,* 199 Conn. 47, 60, 505 A.2d 1225 (1986), and authorities cited therein; *State* v. *Mastropetre,* 175 Conn. 512, 518–19, 400 A.2d 276 (1978); *State* v. *McIntosh,* supra, 184. Thus, if on cross-examination a witness denies having engaged in such prior acts of misconduct, the examiner must accept the answer and is prohibited from offering extrinsic evidence to prove such acts. *State* v. *Martin,* supra, 86; *State* v. *Guthridge,* 164 Conn. 145, 157, 318 A.2d 87 (1972), cert. denied, 410 U.S. 988, 93 S. Ct. 1519, 36 L. Ed. 2d 186 (1973); *State* v. *McIntosh,* supra, 185; *State* v. *Horton,* 8 Conn. App. 376, 380–81, 513 A.2d 168, cert. denied, 201 Conn. 813, 517 A.2d 631 (1986). Where, however, as here, the prior acts of misconduct are relevant to a substantive or material issue in the case, the prior acts can be proven by extrinsic evidence, despite the fact that admission of that evidence directly contradicts the testimony of the state's witness, thereby also raising questions as to his or her credibility. See *State* v. *Franko,* 199 Conn. 481, 485, 508 A.2d 22 (1986); *State* v. *Talton,* 197 Conn. 280, 286, 497 A.2d 35 (1985); *State* v. *Mastropetre,* supra, 521; *State* v. *Zdanis,* 173 Conn. 189, 194–95, 377 A.2d 275 (1977); *State* v. *McIntosh,* supra, 184–85; *State* v. *Butler,* 11 Conn. App. 673, 683, 529 A.2d 219, cert. denied, 205 Conn. 806, 531 A.2d 938 (1987); C. Tait & J. LaPlante, Connecticut Evidence (2d Ed.) § 7.24.4, pp. 210–11; C. McCormick, Evidence (3d Ed.) § 47, pp. 110–11.

There can be no doubt that while the factual circumstances underlying the victim's prior arrest for prostitution would have had, as the trial court indicated, a "significant impact on the credibility of [the victim] for it directly controverted her sworn testimony that she was not a 'hooker' and had never participated in sex for money," they were also clearly relevant under the circumstances of this case to the substantive issue of

consent.[8] Accordingly, the trial court did not err in finding that the information contained in the police report was admissible evidence.

The report of Sergeant Wallace indicated that at 11:25 in the evening of May 5, 1981, while in plain-clothes and in an unmarked car, he was approached by a black male at the intersection of Central Avenue and Grove Street in Waterbury. The black male knocked on Wallace's car window, asked him if he wanted a woman and told him it would cost $20 for a "blow job." When Wallace agreed, the black male called to a woman standing on the sidewalk and indicated that Wallace had agreed to the price. The woman walked over to the car and opened the door. As she entered the automobile, she looked at and apparently recognized Wallace, yelled that he was "a cop," and ran up Grove Street. She was thereafter apprehended and placed under arrest. The report reveals the name of the woman arrested to be the same as that of the victim and also reveals that she was arrested for prostitution.

Since the time of their arrest on the criminal charges, the petitioners have asserted that the victim approached them at the corner of North Elm Street and Cherry Street in Waterbury while they were in an automobile and offered to engage in sex with them for a fee. At trial, they both testified that when they agreed to her price, she got into their car and directed them to the Ponte Club parking lot where she rendered sexual services for the prices agreed upon.

Contrary to the repeated claims of the petitioners that the victim had consented to the sexual acts in ques-

---

[8] "[E]vidence is relevant only when it tends to establish the existence of a material fact or to corroborate other direct evidence in the case." *State* v. *Ruffin*, 206 Conn. 678, 684, 539 A.2d 144 (1988); see also *Dunham* v. *Dunham*, 204 Conn. 303, 324, 528 A.2d 1123 (1987). Stated otherwise, "[r]elevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue." C. Tait & J. LaPlante, Connecticut Evidence (2d Ed.) § 8.1.1, p. 225.

tion in return for payment, the victim, herself, repeatedly asserted at trial that she was "not a hooker" or a "party girl."[9] In addition, during cross-examination by the petitioners' counsel, she unequivocally testified that, prior to March 13, 1982, she "never" engaged in sexual activity with anyone in exchange for money. The jury also heard the victim's claim that she was not a "hooker" when the woman to whose home the victim ran after the incident on March 13, 1982, testified that the victim "kept repeating: I am forty years old and I am not a hooker."

Accordingly, the factual circumstances of the victim's arrest for prostitution on May 5, 1981, could lead to a reasonable conclusion that the victim had agreed on at least one occasion in the past to perform sexual acts for money and that under the circumstances that conclusion would have been relevant to the issue of consent in the petitioners' criminal trial. While this court has yet to face the issue, numerous courts of other jurisdictions have recognized the relevancy and admissibility of evidence tending to establish that the alleged victim of a sexual assault was a prostitute in cases where, as here, consent was a defense to the sexual acts. See *State ex rel. Pope* v. *Superior Court,* 113 Ariz. 22, 29, 545 P.2d 946 (1976); *Roberts* v. *State,* 510 So. 2d 885, 893 (Fla. 1987), cert. denied, 485 U.S. 943, 108 S. Ct. 1123, 99 L. Ed. 2d 284 (1988); *State* v. *Blue,* 225 Kan. 576, 578, 580, 592 P.2d 897 (1979); *State* v. *Roberts,* 393 N.W.2d 385, 388 (Minn. App. 1986); *State* v. *Romero,* 94 N.M. 22, 26, 606 P.2d 1116 (1980); *State* v. *Williams,* 16 Ohio App. 3d 484, 488, 490–91, 477 N.E.2d 221 (1984), aff'd, 21 Ohio St. 3d 33, 487 N.E.2d 560 (1986); *Haynes* v. *State,* 498 S.W.2d 950, 952 (Tex. Crim. App. 1973); *State* v. *Green,* 163 W. Va. 681, 693, 260 S.E.2d 257 (1979). The Arizona Supreme Court,

---

[9] During her trial testimony, the victim explained that in the streets "to party" means to engage in sexual acts.

sitting en banc, specifically stated that "[w]here, for instance, the defendant alleges the prosecutrix actually consented to an act of prostitution, the accused should be permitted to present evidence of her reputation as a prostitute and her prior acts of prostitution to support such a defense." *State ex rel. Pope* v. *Superior Court,* supra; *State* v. *Green,* supra.

The state argues that evidence of the victim's past acts of prostitution are inadmissible under Connecticut's rape shield statute. We disagree. General Statutes § 54-86f specifically provides for the following exceptions to the inadmissibility of evidence of the prior sexual conduct of a sexual assault victim where such evidence is "(1) offered by the defendant on the issue of whether the defendant was, with respect to the victim, the source of semen, disease, pregnancy or injury, or (2) offered by the defendant on the issue of credibility of the victim, provided the victim has testified on direct examination as to his or her sexual conduct, or (3) any evidence of sexual conduct with the defendant offered by the defendant on the issue of consent by the victim, when consent is raised as a defense by the defendant, or (4) otherwise so relevant and material to a critical issue in the case that excluding it would violate the defendant's constitutional rights." In light of our previous discussion, such evidence, at the very least, would be admissible under subsection four of the rape shield statute. To have deprived the petitioners of the ability to present such evidence which was so highly probative, relevant and material to an element of the crime charged would have violated their sixth amendment rights under the United States constitution to confront the witnesses against them. *State* v. *Williams,* supra, 490. Accordingly, we need not address the potential applicability of the other exceptions set forth above.

Having determined that the circumstances of the victim's arrest for prostitution were admissible in the petitioners' criminal trial, we must decide whether the trial court erred in concluding that the evidence was "material" for purposes of determining whether a violation of *United States* v. *Brady,* supra, occurred. Under the *Brady* doctrine, "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States* v. *Bagley,* 473 U.S. 667, 682, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985); see also *United States* v. *Polizzi,* 801 F.2d 1543, 1553 (9th Cir. 1986); *State* v. *Quintana,* 209 Conn. 34, 38, 547 A.2d 534 (1988); *State* v. *Milner,* 206 Conn. 512, 539 n.13, 539 A.2d 80 (1988).

In granting the petition for a new trial, the trial court found that the suppressed evidence would have had a significant impact on the victim's credibility because it would directly have controverted her testimony that she was not a prostitute and had not consented to the sexual activity in question. In addition, the court noted that "[t]he triers of fact were entitled to have the opportunity to adjudge [the victim's] credibility . . . by having [Wallace's] testimony placed before them." "Impeachment evidence as well as exculpatory evidence falls within *Brady's* definition of evidence favorable to an accused. *United States* v. *Bagley,* [supra, 676]; *Giglio* v. *United States,* 405 U.S. 150, 154–55, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972); *Brady* v. *Maryland,* supra, 87; *United States* v. *Polizzi,* [supra, 1553]." *State* v. *Monteeth,* 208 Conn. 202, 213, 544 A.2d 1199 (1988); *State* v. *Pollitt,* 205 Conn. 132, 142, 531 A.2d 125 (1987). In the past, we have held that where, as here, " 'a conviction depends entirely upon the testimony of certain witnesses . . . information affecting their

credibility is material in the constitutional sense [i.e., *United States* v. *Brady,* supra,] since if they are not believed a reasonable doubt of guilt would be created.' *State* v. *Grasso,* 172 Conn. 298, 302, 374 A.2d 239 (1977)." *State* v. *Storlazzi,* 191 Conn. 453, 462, 464 A.2d 829 (1983); see also *Giglio* v. *United States,* supra; *State* v. *Monteeth,* supra. There can be no question that the victim's testimony was crucial to the petitioners' convictions and that the suppressed evidence, if disclosed and admitted, would directly have contradicted her testimony on a material element of the crime of sexual assault in the first degree, i.e., consent. Therefore, we determine that the trial court did not abuse its discretion when it found that a reasonable probability existed that, if the suppressed evidence had been disclosed and admitted, the result of the criminal trial would have been different. Clearly, such evidence undermines confidence in the outcome of the trial. *United States* v. *Bagley,* supra.

Consequently, we conclude that the trial court did not abuse its discretion in granting the joint petition for a new trial.[10] Although the suppressed evidence related directly only to an element of one of the charged crimes, i.e., sexual assault in the first degree, a new trial is required on all counts of the respective informations against the petitioners given the nature of such evidence and its profound relevancy to the victim's credibility as a witness.

There is no error.

In this opinion the other justices concurred.

---

[10] Our decision is dispositive of the related issues raised by the state, i.e., that the evidence was merely cumulative, that the information contained in the report was not "newly discovered" evidence under General Statutes § 52-270 and that the nondisclosure of the information did not violate the petitioners' right to due process, and do not address those issues further.