THE STATE OF OHIO, APPELLEE, *v.* WILLIAMS, APPELLANT.

(No. C-840033—Decided
October 31, 1984.)

*Mr. Arthur M. Ney, Jr.,* prosecuting attorney, and *Mr. Paul R. Markgraf,* for appellee.

*Ms. Jane M. Grote,* for appellant.

DOAN, J. This timely appeal follows appellant's jury trial convictions of two counts of rape, in violation of R.C. 2907.02. Appellant, Hank Williams, a.k.a. Hank Booker, a.k.a. Willie Williams, was sentenced as appears of record.

Appellant's first assignment of error alleges:

"The trial court erred to the prejudice of defendant-appellant in failing to allow defendant-appellant to present testimony concerning the prosecuting witness' sexual conduct with males other than defendant-appellant."

The record reveals that prior to trial, defense counsel made a motion, under R.C. 2907.02(E) for a hearing to determine the admissibility of testimony concerning the past sexual activity of the victim. R.C. 2907.02(E) provides:

"Prior to taking testimony or receiving evidence of any sexual activity of the victim or the defendant in a proceeding under this section, the court shall resolve the admissibility of the proposed evidence in a hearing in chambers, which shall be held at or before preliminary hearing and not less than three days before trial, or for good cause shown during the trial."

At the hearing, it developed that appellant wished to testify that the victim was "his lady." He further wished to testify that the victim was a prostitute and that he was her "pimp." Appellant did not deny that he had sexual intercourse with the victim. Appellant's theory of defense was that the sexual intercourse which occurred between appellant and the victim was consensual and that the filing of the rape charges was the victim's way of "getting even" with appellant for taking some money which the victim had received in return for an act of prostitution. In addition, appellant wished to put another witness on the stand who would testify as to the reputation of the victim as a prostitute.

The trial court considered R.C. 2907.02(D) which provides:

"Evidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the victim's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value.

"Evidence of specific instances of the defendant's sexual activity, opinion evidence of the defendant's sexual activity, and reputation evidence of the defendant's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, the defendant's past sexual activity with the victim, or is admissible against the defendant under

section 2945.59 of the Revised Code, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value."

The court determined that the testimony of appellant concerning the victim's past sexual activity with appellant was admissible as it was directly probative of the essential element of force or threat of force. The court further determined that appellant's testimony that the victim was a prostitute and that he was her "pimp" would be admitted, as the testimony was "so intricately interwoven to the * * * defendant's testimony of the relationship with the victim * * *. I don't see how it can be excluded without destroying the testimony of the defendant in his defense, and therefore it cannot be excluded in this particular fact pattern."

The court further held that the testimony of the other witness as to the victim's reputation as a prostitute was excluded by the statute.

At trial, the victim took the witness stand and testified, on direct examination, as follows:

"Q. You mentioned that you knew the defendant Hank Williams or at least had met him before. Have you ever had sexual intercourse with Hank Williams?

"A. No, sir, I haven't.

"Q. Have you ever gone out and solicited for sex or turned a trick?

"A. No, sir, I haven't.

"Q. Can you tell us why?

"A. I'm gay.

"Q. And by 'gay,' you mean you do not have sex with men; is that correct?

"A. That's right."

Subsequent to this testimony by the victim, defense counsel again raised the issue of the admissibility of evidence concerning the victim's past sexual activity. Defense counsel argued that because the victim had testified, on direct examination, that she was gay and that consequently she had never engaged in sexual intercourse with men, she had put her own past sexual activity and sexual reputation in the community into issue. Therefore, counsel argued the defendant should be able to introduce evidence of her sexual reputation in the community and evidence of her prior acts of sexual intercourse with men other than defendant. In addition, defense counsel argued that to exclude evidence that the victim was not a lesbian and had engaged in sexual intercourse with men would be paramount to precluding a defense by the defendant. The trial court again refused to allow witnesses other than defendant to testify as to the victim's prior sexual activity.

Essentially, the argument presented by appellant on appeal urges that the refusal of the trial court to allow the testimony of other witnesses concerning the past sexual activity of the victim, offered to refute her direct testimony that she was a lesbian and for that reason had never consented to sexual intercourse with any man and, therefore, she did not consent in this instance, is a violation of the appellant's Sixth Amendment right to confrontation of witnesses against him.

Before focusing upon the provisions of R.C. 2907.02(D) and (E), we perceive a preliminary question of whether or not the evidence offered by appellant is excluded under Evid. R. 608. Evid. R. 608(B) provides:

"*Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility,* other than conviction of crime as provided in Rule 609, *may not be proved by extrinsic evidence.* They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthful-

ness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

"The giving of testimony, whether by an accused or by any other witness, does not operate as a waiver of his privilege against self-incrimination when examined with respect to matters which relate only to credibility." (Emphasis added.)

The issue for determination is whether the evidence, offered by appellant in the form of testimony by the witnesses to past specific sexual acts, as to the victim's prior sexual activity with men other than appellant, would be excluded under the provisions of Evid. R. 608(B).

The Supreme Court of Ohio has interpreted the provisions of Evid. R. 608(B) in two recent cases, *State v. Leuin* (1984), 11 Ohio St. 3d 172, and *State v. Kamel* (1984), 12 Ohio St. 3d 306. In *State v. Leuin, supra,* a dentist was charged with gross sexual imposition. Specifically, it was charged that he had fondled the breasts and genitalia of female patients under general anesthesia. One of the defendant's office assistants testified, for the defense, that she and defendant never had sexual relations at the office, that defendant was not her "boyfriend" and that the defendant did not provide her with expensive personal gifts. The assistant further testified that the defendant did not keep pornographic slides or movies at his office.

In rebuttal of the office assistant's testimony, the state offered the testimony of several witnesses, including former employees of the defendant, who stated that the assistant had received gifts from defendant and that the defendant and the assistant had engaged in sexual intercourse at defendant's office. Further, the witnesses testified that defendant kept pornographic slides and movies at his office.

The Supreme Court held that under Evid. R. 608(B) specific instances of conduct, which relate only to the credibility of a witness, may not be established by extrinsic evidence. *State v. Leuin, supra.* The court further held that the rebuttal testimony of the witnesses, who testified that defendant and the office assistant had engaged in sex at the office and that the defendant kept pornographic slides and movies at the office, was inadmissible under Evid. R. 608(B). The court pointed out that, by the state's own admission, the testimony was offered solely to impeach the credibility of the office assistant. The court further stated:

"This case does not present the situation where the evidence sought to be excluded by Evid. R. 608(B) was on a non-collateral matter or, in other words, was relevant to a material issue in the case." *State v. Leuin, supra,* at 175.

The Ohio Supreme Court again considered Evid. R. 608(B) in *State v. Kamel, supra.* In *Kamel,* a father and mother were charged with child endangering and involuntary manslaughter in connection with the death of their two-year old son. The father took the witness stand and denied, on cross-examination, that either parent had ever disciplined their children by grabbing the child's ear and slapping him in the face. He further testified that he was unable to recall whether a punishment of this nature had been administered earlier at a Sears, Roebuck & Co. store to one of the couple's children. On rebuttal, a state witness testified that three or four years prior to trial, he had observed an incident at a Sears store in which Kamel pulled one of his children upward by the ear and beat the child around the face.

The Supreme Court noted that the court of appeals had correctly held that the evidence was inadmissible under Evid. R. 404(B) to prove the bad character of Kamel and to imply that he had acted in conformity with this bad character in the case before the court. Before

the Supreme Court, the state argued that the holding of the court of appeals was erroneous, as the testimony was not introduced to show the bad character of Kamel, but rather the state argued, the evidence was introduced solely to impeach the credibility of Kamel under Evid. R. 608(B). The state argued that for this limited purpose, the evidence was admissible. The Supreme Court rejected the state's argument, holding that "[o]ther than the Evid. R. 609 exception for certain criminal convictions, a witness' credibility may not be impeached by extrinsic proof of specific instances of his conduct." *State* v. *Kamel, supra,* at 311. Therefore, the evidence of the incident at the Sears store could not be introduced solely to impeach the credibility of Kamel.

The case *sub judice* can be distinguished from both *Lewin* and *Kamel* in that the evidence proffered by appellant was not offered solely to impeach the credibility of the witness. The victim in the instant case essentially used the "forbidden inference" in order to prove an essential element of the crime of rape, to wit, force or threat of force by setting forth a psychological or biological fact implying the mental or emotional impossibility of consent. The victim stated that she was gay, that she had never and would never consent to sexual relations with men and that therefore she did not consent to the sexual intercourse with appellant. We find that the evidence proffered by appellant goes beyond merely impeaching the credibility of the witness. The evidence goes to the material element of whether or not the sexual intercourse between appellant and the victim occurred with force or threat of force. In fact, the issue of consent was the pivotal issue at trial, as appellant admitted the sexual intercourse but defended on the theory that the intercourse was consensual. We determine that the case *sub judice,* to paraphrase the *Lewin* court, presents

the situation where the evidence sought to be excluded by Evid. R. 608(B) is on a non-collateral matter and is relevant to a material issue in the case.

Because the evidence proffered by appellant goes directly to a material issue in the case and is not to be introduced to merely impeach the credibility of the victim, the evidence is not excluded under Evid. R. 608(B).

Having determined that the evidence proffered by defendant-appellant is not inadmissible under Evid. R. 608(B), we now turn to the provisions of R.C. 2907.02(D), Ohio's rape shield statute. R.C. 2907.02(D) provides, in pertinent part:

"Evidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the victim's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value."

It is clear that the statute limits evidence of the victim's past sexual activity, with persons other than the defendant, to evidence relating to the origin of semen, pregnancy or disease. Appellant contends that the statute is unconstitutional as applied in this case because it violates the right of appellant to confront the witnesses against him as guaranteed by the Sixth Amendment.

In *State* v. *Gardner* (1979), 59 Ohio St. 2d 14 [13 O.O.3d 8], appellants contended that Ohio's rape shield statute, specifically R.C. 2907.02(D), was an unconstitutional infringement upon appellants' Sixth Amendment right to confront witnesses against them and upon their right to a fair trial under the Due Process Clause. In *Gardner,* defense

counsel wished to call a witness who would testify that the victim had solicited sex for him. In addition, the defendants wanted to introduce evidence on the victim's reputation as a prostitute. This was for the purpose of impeaching the credibility of the victim, as she had testified on *cross-examination* that she had never engaged in prostitution. The trial court held that the evidence was inadmissible under R.C. 2907.02(D).

The Ohio Supreme Court stated that in determining whether the rape shield law was unconstitutional as applied, a balancing test must be employed. The court must balance the state interest which the statute was designed to protect against the probative value of the excluded evidence. *State* v. *Gardner, supra,* at 17. The *Gardner* court pointed out that several legitimate state interests are advanced by the rape shield statute:

"First, by guarding the complainant's sexual privacy and protecting her from undue harassment, the law discourages the tendency in rape cases to try the victim rather than the defendant. In line with this, the law may encourage the reporting of rape, thus aiding crime prevention. Finally, by excluding evidence that is unduly inflammatory and prejudicial, while being only marginally probative, the statute is intended to aid in the truth-finding process." *Id.* at 17-18.

The court held that under the facts of the *Garnder* case the evidence was properly excluded. The court stated:

"*Assuming that instances might exist where prior sexual activity by the complainant with third parties is relevant, we are not presented with such a situation in the present application of R.C. 2907.02(D).* Evidence that complainant had a reputation as a prostitute is not sufficiently probative of consent to outweigh the state's legitimate interest in excluding the testimony, at least

where there is no suggestion in the record that financial arrangements were entered into for sexual activities in this instance." (Emphasis added.) *Id.* at 18.

In addition, the court stated:

"Likewise, defense attempts to impeach the credibility of complainant by the reputation evidence and evidence of a specific solicitation were correctly prohibited by the trial court. *The prosecution did not raise the issue of complainant's chastity; rather the defense first inquired into the subject on cross-examination. Fenrick was asked whether she was involved in prostitution and she answered in the negative. Having initiated the inquiry, appellants are bound by the answer they received.*" (Emphasis added.) *Id.* at 18-19.

For the above reasons, the *Gardner* court determined that the defendants' constitutional rights were not violated by the exclusion of the evidence.

The Ohio Supreme Court again considered the constitutionality of R.C. 2907.02(D) as applied in *State* v. *Ferguson* (1983), 5 Ohio St. 3d 160. In *Ferguson,* the victim testified previously on a preliminary matter that she had had sexual intercourse no earlier than ten days prior to the sexual intercourse with the defendant. The defendant alleged that he could produce evidence, in the form of hospital records, which showed that the victim had had sexual intercourse two days prior to the incident involving defendant. Defendant argued that the exclusion of the evidence and the refusal of the trial court to allow cross-examination on the matter violated appellant's Sixth Amendment right to confront the witnesses against him.

The *Ferguson* court proceeded to balance the interests of the state against those of the defendant. In determining that R.C. 2907.02(D) was not unconstitutional as applied in that case, the court stated:

"We are unpersuaded that appel-

lee's confrontation rights mandate that he be allowed to delve into matters so tenuously connected with the truth of the victim's testimony especially in light of the aforestated state interests to exclude that line of cross-examination. Further, the key fact at issue at trial was whether the victim consented to sexual activity with appellee, not whether she had sexual intercourse two or ten days earlier. Hence, we hold that *R.C. 2907.02(D) will render inadmissible evidence of the rape victim's sexual activity with one other than the accused where the evidence: does not involve the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender; is offered simply to impeach the credibility of the victim, and is not material to a fact at issue in the case."* (Emphasis added.) *Id.* at 165.

Although in both the *Gardner* and *Ferguson* cases the Supreme Court found that the interests of the state outweighed those of the defendant(s), the court did not foreclose the possibility that there may be circumstances where the exclusion of evidence under R.C. 2907.02(D) would violate a defendant's constitutional rights.

In the case *sub judice,* the victim testified on *direct examination* that she was a lesbian, that because of this she had never and would never consent to sexual relations with a man and that therefore she did not consent to sexual intercourse with appellant. Additionally, defense counsel cross-examined the witness as follows:

"Q. All right, and you consider yourself as a person who likes females, rather than males, in your sexual orientation, which is towards other females; is that correct?

"A. That's correct.

"Q. All right. You offer this as a basis for the proposition that you would therefore not voluntarily have sex or intercourse or other sexual relations with a male person; is that the reason you offer it?

"A. That is right."

We perceive that the evidence in question in the case *sub judice* is fundamentally different from that which was offered in the *Gardner* and *Ferguson* cases, *supra.* The evidence offered in *Gardner* and *Ferguson* was offered solely to impeach the credibility of the witnesses and was only marginally probative of the issue of consent. It is clear that in the instant case the prosecution is relying on the fact that the victim claims to be a lesbian as proof that she would never have consensual sexual relations with any man and that therefore she did not consent to sexual relations with appellant. This testimony was elicited by the prosecution on direct examination. The evidence is clearly substantially material, relevant and probative as to the element of force or threat of force in consummating the admitted sexual activity. As we have noted, *supra,* consent is the fundamental issue in the case at bar.

The evidence proffered by appellant would tend to show that the victim was lying when she said she was a lesbian and had never had consensual sexual relations with any man and that therefore she did not consent in the case *sub judice.* This evidence would go to the very heart of the issue of consent, the only issue contested at trial. The refusal to allow appellant to present evidence which is so highly probative, relevant and material as to an element of the crime violated his Sixth Amendment rights to confront the witnesses against him.

We find that under the facts of the case *sub judice* the right of appellant to confront witnesses against him, as guaranteed by the Sixth Amendment, outweighs the interests of the state in excluding this type of evidence. Therefore, we hold that R.C. 2907.02(D) is unconstitutional as applied to appellant in the instant case. We further hold that the trial court erred in ex-

cluding the evidence proffered by appellant.

Additionally, we find that as the victim put her own sexual past in issue on direct examination, she waived the protections of R.C. 2907.02(D) as far as any evidence of her past sexual conduct which was directly probative of and relevant to a material element of the charged crime.

Appellant's first assignment of error is well-taken.

Appellant's second assignment of error alleges:

"The trial court erred to the prejudice of defendant-appellant in failing to allow defense counsel to cross-examine the complaining witness concerning her juvenile record."

The record reveals that on cross-examination defense counsel questioned the victim concerning her juvenile record. The court sustained an objection by the prosecutor to this line of questioning. Subsequently, the prosecution called the victim's mother to testify in rebuttal. The victim's mother testified that her daughter was confined in a juvenile facility from February 1983 to September 13, 1983. This evidence was offered to refute testimony by defense witnesses who stated that they frequently saw appellant and the victim together during the summer of 1983. Additionally the evidence was introduced to refute appellant's testimony that he thought he and the victim had engaged in sexual relations in August 1983. On cross-examination defense counsel asked the witness why her daughter had been confined in a juvenile facility. The trial court sustained the prosecutor's objection to the question.

Appellant argues that because the prosecution elicited on direct examination that the victim had been confined in a juvenile facility, defense counsel had the right, on cross-examination, to question the witness concerning her daughter's juvenile record. Additionally, appellant argues that the court's refusal

to allow him to cross-examine the victim as to her juvenile record violates his Sixth Amendment right to confrontation of witnesses. We disagree.

Evid. R. 609(D) provides that evidence of juvenile adjudications is not admissible except as provided by statute. Therefore the trial court was correct in sustaining the prosecutor's objections under Evid. R. 609(D). Further, the evidence of the victim's juvenile record did not go to a material issue in the case. We find that the state's interest in excluding this type of evidence substantially outweighs the defendant's right to cross-examine the witness on this point. Therefore, we hold that the appellant's Sixth Amendment rights were not impermissibly infringed by the refusal of the trial court to allow testimony concerning the victim's juvenile record. Appellant's second assignment of error is overruled.

In light of our disposition of appellant's first assignment of error, the judgment of the trial court is reversed and the cause is remanded to the trial court for further proceedings consistent with law and with this opinion.

*Judgment reversed and*
*cause remanded.*

KLUSMEIER, J., concurs.

PALMER, P.J., dissents.

PALMER, P.J., dissenting. The majority reaches its result in this case by concluding, first, that the defendant's proffered rebuttal testimony as to specific acts of heterosexual conduct on the part of the victim was erroneously excluded under Evid. R. 608(B), and, second, that rebuttal testimony as to the victim's general reputation as a prostitute, excluded under R.C. 2907.02(D), resulted in an unconstitutional denial of the defendant's Sixth Amendment right of confrontation. Since I cannot agree to either proposition, I dissent.

## I

With respect to the first of those propositions, dealing with the thrust of Evid. R. 608(B), the majority considers, as it must, the purport of *State v. Leuin* (1984), 11 Ohio St. 3d 172, and *State v. Kamel* (1984), 12 Ohio St. 3d 306. Finding in *Leuin* certain language, quoted in the majority opinion, limiting the exclusion of Evid. R. 608(B) to "collateral" matters, *i.e.,* those matters not relevant to a material issue in the case, the majority finds that the matter sought to be explored in rebuttal in the instant case was *non-collateral* and was, therefore, excused from the effect of the rule. I am unable to follow the distinction sought to be made.

Here, as in both *Leuin* and *Kamel,* the thrust of the proffered rebuttal testimony was unarguably to challenge the credibility of the witness, who had testified that she did not consent to the defendant's heterosexual embrace because she was "gay" and did not sexually consort with males, by extrinsic evidence of acts of sexual conduct with other males. Consensual intercourse with other males on other occasions, whether or not it is marginally probative, is surely collateral to the material issue of whether or not consent was given *on the instant occasion.* I can see no difference between this situation and one in which a witness testifies that she did not consent to sexual conduct because it violated her religious and moral principles. Surely we would not permit argument that such testimony would open the door to rebuttal witnesses who would testify that the witness, on the contrary, was an amoral atheist who slept with a succession of strangers.

If an attack on the credibility of a witness by extrinsic proof of specific instances of conduct is impermissibly collateral where the witness has testified simply and without elaboration that she did not consent, as I think the majority would be constrained to agree, but becomes permissibly *non-collateral* when the witness adds a *reason* why she did not consent, then I have not understood the language of *Kamel* that:

"The meaning of this rule is very clear. Other than the Evid. R. 609 exception for certain criminal convictions, a witness' credibility may not be impeached by extrinsic proof of specific instances of conduct. Such conduct may be inquired into only by the intrinsic means of cross-examination within the guidelines set forth in Evid. R. 608(B)." *Id.* at 311.

I would affirm the trial court's exclusion of the testimony.

## II

As to the second proposition, the asserted unconstitutionality of R.C. 2907.02(D) as applied by the trial court in excluding the testimony of witnesses for the defendant as to the reputation of the victim as a prostitute, I am again unable to follow the majority in distinguishing the rule of *State v. Gardner* (1979), 59 Ohio St. 2d 14 [13 O.O.3d 8], and *State v. Ferguson* (1983), 5 Ohio St. 3d 160.[1]

Thus, in *Gardner,* the court held that the proffered reputation evidence was properly excluded when "there * * * [was] no suggestion in the record that financial arrangements were entered into for sexual activities *in this instance.*" (Emphasis added.) *Gardner, supra,* at 18. In *Ferguson,* the court also

---

[1] The majority finds comfort in language in *Gardner* and *Ferguson* supporting the proposition that the rape shield law could, under certain (unelucidated) circumstances be held to be unconstitutional as applied. While accurately represented, the language cited in the two cases seems to me to find its principal significance in emphasizing the legislative policy underlying R.C. 2907.02(D) "of discourag[ing] the tendency in rape cases to try the victim rather than the defendant." *Gardner, supra,* at 17.

upheld the trial court's exclusion of proffered testimony upon its finding that "the key fact at issue at trial was whether the victim consented to sexual activity *with appellee,* not whether she had sexual intercourse two or ten days earlier." (Emphasis added.) *Ferguson, supra,* at 164-165. Having found in *Gardner* that there was no evidence of prostitution in the "sexual activities in this instance," and by narrowly defining the parameters of the issue of consent in *Ferguson* to "whether the victim consented to sexual activity with appellee," the Supreme Court upheld exclusion of the proffered evidence. It was, said the court, offered solely to impeach the credibility of the victim. Further, it was only marginally probative of the issue of consent, and its probative value was substantially outweighed by the state's interest in discouraging a public airing of the victim's promiscuity, in aiding crime prevention by encouraging victims to report rape, and in aiding the truth-finding process by excluding prejudicial, marginally probative evidence.

The majority perceives the proffered testimony in the instant case as "fundamentally different from that which was offered in the *Gardner* and *Ferguson* cases." It seems to me, on the contrary, that the reputation testimony proffered here was fundamentally *identical* to that proffered in *Gardner* and *Ferguson* since it was offered solely to impeach the victim's credibility and was only marginally probative of the issue of consent. Thus, in the instant case, as in *Gardner,* there was no evidence of a "financial arrangement" for the sexual activities between the victim and the defendant. Similarly, the key issue in this case, as in *Ferguson,* was whether the victim consented to sex with *the defendant* and not her predilection for sex with anyone, male or female, for the right price. The proffered testimony as to the victim's reputation for consensual sex with others for money is at best tangential to the key issue in this case, *viz.,* the consensual or nonconsensual nature of the sexual activities *between the victim and the defendant.* The defendant's sole purpose in offering the reputation evidence, thus, was to attack the victim's credibility, and, as such, was inadmissible under the rape shield law.

Finding no valid distinction between this case and *Gardner* and *Ferguson,* I conclude, consistent with the Supreme Court's determinations, that the rape shield provision, as applied in this case, does not unconstitutionally infringe the defendant's right to confront the witnesses against him. Applying the *Gardner* test of balancing the value of the proffered reputation testimony, in light of the alternative means available to the defendant to refute the victim's claim of homosexuality,[2] against the state's interest in protecting rape victims from just this sort of prejudicial reputation evidence, I would find that the probative value of the testimony is substantially outweighed by the state interests underlying the rape shield provision. I, therefore, would affirm the trial court's exclusion of the proffered reputation evidence, and affirm the judgment.

---

[2] It should be noted that application of the *Gardner* and *Ferguson* rule did not leave the defendant without the means of attacking the victim's testimony. He had available and used the intrinsic means of cross-examination of the victim, and was permitted by the trial court to himself testify to his relationship with the victim as both lover and procurer.