[Cite as *State v. Osei*, 2019-Ohio-3355.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ATHENS COUNTY

STATE OF OHIO,                          :
                                        :       Case No. 18CA19
        Plaintiff-Appellee,             :
                                        :
        vs.                             :       DECISION AND JUDGMENT
                                        :       ENTRY
ROXON KOFI OSEI,                        :
                                        :
        Defendant-Appellant.            :       **Released: 08/14/19**
_____

APPEARANCES:

Timothy Young, Ohio State Public Defender, and Craig M. Jaquith, Assistant Ohio State Public Defender, Columbus, Ohio, for Appellant.

Keller J. Blackburn, Athens County Prosecuting Attorney, and Merry M. Saunders, Assistant Athens County Prosecuting Attorney, Athens, Ohio, for Appellee.
_____

McFarland, J.

{¶1} This is an appeal from an Athens County Court of Common Pleas judgment entry convicting Appellant, Roxon Kofi Osei, of rape. The trial court imposed an 11-year prison sentence. Appellant asserts the following assignments of error: (1) the trial court erred interpreting R.C. 2907.02(D) to preclude testimony regarding prior sexual activity between Appellant and the victim, C.S.; (2) Appellant received ineffective assistance of counsel, in violation of the Sixth Amendment to the United States

Constitution, when his trial counsel failed to object to the presence of several victim advocates during the trial; and (3) Appellant's maximum sentence is clearly and convincingly unsupported by the record.

{¶2} Regarding Appellant's first assignment of error, we find the trial court did not abuse its discretion in precluding him from introducing evidence of prior sexual activity between him and C.S. With respect to Appellant's second assignment of error, we find his trial counsel was not ineffective for failing to object to the presence of more than one support person at trial. Finally, with respect to Appellant's third assignment of error, we find Appellant's 11-year sentence is not clearly and convincingly contrary to law. Accordingly, we affirm the judgment of the trial court.

FACTS AND PROCEDURAL HISTORY

{¶3} In 2017, the State charged Appellant with two counts of rape in violation of R.C. 2907.02(A)(1)(c) [victim is unable to consent to sexual conduct] and R.C. 2907.02(A)(2) [victim is subject to sexual conduct by force or threat of force]. Both are first degree felonies.

{¶4} On April 19, 2018, Appellant filed a motion to permit the introduction of four instances of alleged past sexual activity between Appellant and C.S. pursuant to R.C. 2907.02(D). Appellant alleged the past

activity was consensual, and therefore relevant to whether the alleged rape was, in fact, consensual sexual activity.

{¶5} The State filed a memorandum contra alleging three of the four instances cited by Appellant did not involve sexual activity, and therefore were not admissible under R.C. 2907.02(D). The State also alleged that the fourth incident of sexual activity between Appellant and C.S. in December of 2016 was not consensual, and consequently was not relevant to the rape charges pending against Appellant.

{¶6} After an in camera hearing, the trial court issued a judgment entry concluding that three of the four incidents of alleged sexual activity in fact did not involve sexual activity, and consequently were not admissible under R.C. 2907.02(D).

{¶7} With regard to the fourth incident that occurred in December 2016, the court found (1) that C.S. had consumed alcohol but was not impaired, and (2) the sexual activity between C.S. and Appellant was not consensual. The court recognized the rape charges alleged that on January 10, 2017, C.S.'s "ability to resist or consent was substantially impaired." The court stated that "because the December encounter was not consensual, it has no relevance to Defendant's position that the January sexual activity was consensual." Therefore, the court concluded that although Appellant's

"proffer may be material, the inflammatory and prejudicial nature of the material outweighs its probative value." Consequently, the court denied Appellant's motion to introduce specific instances of the victim's past conduct.

{¶8} The case went to trial. The State's first witness was one of C.S's friends at Ohio University, Sarah Franks, who testified that she, C.S., and Appellant often socialized together. Ms. Franks testified that on January 9, 2017, she, C.S., Appellant, and other friends went to the basement of Stephen's Bar in Athens, Ohio, to celebrate Sarah Franks' and C.S.'s 21st birthdays. Ms. Franks testified that C.S. had "lots of drinks" that night. She testified that she also remembered Appellant drinking as well and that she saw Appellant buy several alcoholic drinks for C.S. that night.

{¶9} Ms. Franks testified that while Appellant was watching C.S. dance, he told her (Sarah Franks) that "I've got to get [C.S.] tonight." Ms. Franks responded "you know we love you but it's not, she doesn't feel that way about you." She testified that Appellant was in an "intense mood" that night. Ms. Franks testified that she told C.S. that "[Appellant] was just being different" and to "kind of put on her guard a little bit about [Appellant]."

{¶10} Ms. Franks testified that C.S.'s speech got "sloppy" and she "[s]tumbled throughout the night." She testified that C.S. vomited in the bathroom.

{¶11} Ms. Franks testified as the party ended, friends helped C.S. up the stairs with a person on either side of her. She testified that she, C.S., and Appellant sat at a booth and at that point, C.S.'s head was on the table of the booth. Ms. Franks testified that Appellant did not appear intoxicated that night.

{¶12} Ms. Franks testified that she walked home with some other friends and had no more contact with C.S. that night. She testified that she had never seen C.S. that drunk. She testified that at three or four that morning she received a call from C.S. stating that Appellant had raped her.

{¶13} Another witness for the State, Makayla Benyi, was C.S.'s friend from high school. Ms. Benyi testified that she also attended C.S.'s 21st birthday party at Stephen's Bar. She testified that while getting ready for the party they all drank alcoholic beverages, including C.S. She testified that the party started about 8:00 p.m.

{¶14} Ms. Benyi's testimony confirmed that C.S. was drinking and that Appellant purchased some of her drinks. Ms. Benyi testified that it "seemed as if [C.S.] always had a drink in her hand throughout the night."

She testified that C.S. was "very, very, intoxicated" and "fell multiple times." She testified that she saw C.S. throwing up in the bathroom that night at Stephen's Bar and that eventually she and others effectively carried C.S. upstairs and put her in a booth. She testified that C.S. was slumped over.

{¶15} Ms. Benyi testified that she, Kathleen Sutton, and Appellant helped C.S. home. Ms. Benyi and others who had come with her were staying the night. Eventually, C.S. was settled in her bed. Ms. Benyi and two other girls left the room to make their sleeping arrangements, but when Ms. Benyi returned to C.S.'s room to retrieve something she had forgotten, she found the door was locked. She testified that she knocked on the door and heard the ruffling of clothes and blankets and a "distinctive belt sound." Ms. Benyi testified that she knocked several more times and Appellant answered. She testified that Kathleen Sutton and Mary Oyster then came to C.S.'s room as well. Ms. Benyi checked on C.S. who just "grunted."

{¶16} Ms. Benyi told Appellant not to touch C.S. or "I will hurt you." She testified that Appellant "kind of laughed" and said "you must not know what kind of a person I am if you think I would do something like that." Ms. Benyi testified that all three of them left the bedroom and went to the living room, where they discussed the situation.

{¶17} Ms. Benyi testified that after about five minutes, she returned to C.S.'s room and knocked and again she heard the ruffling and belt noises and then Appellant answered, and he seemed irritated. C.S was still face-down on the bed. Ms. Benyi testified that she did not know what to do and after a couple of minutes she left the room again, but Appellant and C.S. remained. She testified that she was becoming concerned and texted some friends who were still out. She testified that she went back to the room for a third time and knocked. Ms. Benyi testified that she again heard the same noises (ruffling, belt) and it took longer for Appellant to open the door. She testified that she told Appellant that several girls would be sleeping on the floor in C.S.'s room. Ms. Benyi testified that Appellant asked if they could sleep in the hallway, but she said no, and propped open the bedroom door.

{¶18} Ms. Benyi testified that she went to the living room and met the two girls who had been out and told them everything that had happened. When all three returned to C.S.'s bedroom, the door was closed again. She testified that she did not knock but instead opened the door and saw C.S. and Appellant in bed together covered with blankets. Ms. Benyi testified that she told Appellant to leave, but he protested. She testified that one of the girls had Appellant's phone and said that she would not give it to him until he left. Ms. Benyi testified that Appellant told all three girls to "get the fuck

out," and when they did they could hear the ruffling and belt noises. She testified that Appellant then opened the door and exited to retrieve his phone. She testified that she asked C.S. if Appellant touched her and C.S. said "uh/huh." Ms. Benyi testified that she became very upset.

{¶19} Ms. Benyi further testified that the next morning C.S. told her that she (C.S.) was bleeding. She testified that she asked C.S. if she was having her period. Then she asked C.S. if Appellant had sex with her, and C.S. nodded affirmatively.

{¶20} C.S testified that she was a student at Ohio University who was going to celebrate her 21st birthday with her best friend Sarah Franks, and her high school friends, Leslie Flynn, Eoin Rude, Makayla Benyi, Kaitlyn Sutton, Mary Oyster and James Laisure at Stephen's Bar on January 9, 2017. C.S. testified that she did not get to eat her dinner before helping to decorate the basement at Stephen's Bar for her party. C.S. testified that Appellant was one of the first persons to arrive. C.S described Appellant as a friend always hanging out as a group. C.S. testified that as other friends arrived, she started drinking. She also remembered that she danced. C.S. testified that friends, including Appellant, were buying her drinks. C.S. testified that she did not remember how she got home.

{¶21} C.S. testified that the next thing she remembered was Appellant "raping" her that night.  C.S. testified that she felt physical pain from the rape as well as shock and confusion.  C.S. testified that she did not remember her friends knocking at her bedroom door that night or coming into the room.

{¶22} C.S. testified that the next morning she noticed her underwear had been taken off.  C.S. testified that when she showered her thighs were bruised and her vagina was bleeding.  C.S. testified that she told Makayla Benyi that she thought she had been raped.  C.S. testified that she went to the hospital and was examined.  C.S. reported the rape to the police the next day.[1]

{¶23} Detective Simpson of the Athens Police Department testified that he interviewed Appellant, who admitted that he had sex with C.S. on January 10, 2017 after her birthday party.  Detective Simpson testified that when asked if C.S. was intoxicated, Appellant said that she was "fucked up," and that he had "made a mistake that night."  Detective Simpson interpreted Appellant's statement as a confession.

{¶24} Appellant testified on his own behalf.  He testified that he met C.S. his junior year at Ohio University.  He, C.S. and three others were

---

[1] The State presented other witnesses who attended the party, but we do not restate their testimony because for the most part it is merely corroborative of the testimony already provided.

friends who would hang out.  Appellant testified that prior to C.S.'s birthday he and C.S. made plans to go out to eat at Chipotle and then went back to C.S.'s house.  He testified it was then he told C.S. that he loved her. Appellant testified the day after their date they went on a long walk. Appellant testified that C.S. personally invited him to her birthday party.

{¶25} Appellant testified that he had four beers before he went to C.S.'s birthday party.  Appellant testified that he considered C.S. to be his "girlfriend."  Appellant testified he did not notice anything unusual about C.S.'s behavior that night.  He also testified "You know we [were] all drunk, excited for [C.S.'s] and Sarah's birthday."

{¶26} Appellant testified that he did not think C.S. needed help the night of her birthday party.  Appellant testified that he did not remember "specifics" when they made it back to C.S.'s house.  Appellant testified that when he went to C.S.'s room he intended to "spend the night and chat." Appellant testified that he kissed C.S. and she kissed him back, when he heard a knock on the door.  He got up to answer the door and then closed it. Appellant testified that he got back in bed and he and C.S. were having sex when there was another knock on the door.  Appellant testified that he got dressed and left.  He testified that he believed the sex was consensual.

**{¶27}** However, on cross examination in explaining why he told Detective Simpson that having sex with C.S. was poor judgment on his part, he testified that "when you are drunk you make, you do things without even realizing that you are doing things."

**{¶28}** Throughout the trial, the jury was periodically permitted to view video of C.S. taken at various times during the night of the party from cell phones of some of the party attendees.

**{¶29}** The jury found Appellant guilty on both counts of rape. The trial court merged count two (rape by force) into count one (rape of a victim incapable of consenting) and imposed a maximum 11-year prison sentence. It is from this judgment that Appellant appeals, asserting three assignments of error.

ASSIGNMENTS OF ERROR

"I. THE TRIAL COURT ERRED WHEN IT INTERPRETED R.C. 2907.02(D) TO PRECLUDE TESTIMONY REGARDING PRIOR SEXUAL ACTIVITY BETWEEN MR. OSEI AND C.S.

II. MR. OSEI RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STARTES CONSTITUTION, WHEN TRIAL COUNSEL FAILED TO OBJECT TO THE PRESENCE OF NUMEROUS VICTIM'S ADVOCATES DURING THE TRIAL.

III. MR. OSEI'S MAXIMUM SENTENCE IS CLEARLY
AND CONVINCINGLY UNSUPPORTED BY THE
RECORD."

ASSIGNMENT OF ERROR I

{¶30} In his first assignment of error, Appellant asserts the trial court

erred interpreting R.C. 2907.02(D) to preclude testimony regarding the prior

sexual history between him and C.S.  Appellant makes two arguments in

support of this assignment of error.

{¶31} The standard of review for a trial court's decision under R.C.

2907.02(D), often referred to as the rape shield provision, is an abuse of

discretion.  *State v. Minton*, 4th Dist. Adams No. 15CA1006, 2016-Ohio-

5427, 69 N.E.3d 1108, ¶ 19, citing *State v. Nguyen,* 4th Dist. Athens No.

12CA14, 2013-Ohio-3170, 2013 WL 3816605, ¶ 44.  An abuse of discretion

is when the trial court's decision is unreasonable, arbitrary, or

unconscionable.  *Id.*, citing *State v. Knauff,* 4th Dist. Adams No. 13CA976,

2014-Ohio-308, 2014 WL 346691, ¶ 19.

{¶32} R.C. 2907.02(D) states:

> "Evidence of specific instances of the victim's sexual
>
> activity, opinion evidence of the victim's sexual activity, and
>
> reputation evidence of the victim's sexual activity shall not
>
> be admitted under this section unless it involves evidence of

the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value * * *.

The multiple purposes of Ohio's rape shield law are to: guard the complainant's sexual privacy and protect her from undue harassment; discourage the tendency in rape cases to try the victim rather than the defendant; encourage the reporting of rape, thus aiding crime prevention; exclude evidence that is unduly inflammatory and prejudicial, while being only marginally probative; and aid in the truth-finding process." *State v. Williams*, 21 Ohio St.3d 33, 39, 487 N.E.2d 560 (1986), citing *State v. Gardner*, 59 Ohio St.2d 14, 17-18, 391 N.E.2d 337 (1979).

{¶33} Appellant's first argument alleges that the sexual activity between him and C.S. in December 2016 was highly relevant to whether C.S. consented to the alleged sexual conduct that occurred on January 10, 2017, regarding *count 2* (rape by force or threat of force).  Appellant asserts the trial court ignored count 2 of the rape charge in its decision and entry

denying admission of the December 2016 sexual activity and that failure was an abuse of discretion.

{¶34} After the in-camera hearing, the trial court issued a decision and entry that denied Appellant's motion to admit the December 2016 sexual activity between C.S. and Appellant. In pertinent part, the entry stated that the December 2016 sexual activity was not consensual and therefore "not relevant to the *indicted incident*." The State indicted Appellant on two counts rape: rape of a victim who is unable to consent and rape by force or threat of force. We find that the trial court's use of the term "indicted incident" indicates that it did consider both rape charges in holding that the December 2016 sexual activity would not be admitted.

{¶35} Appellant also alleges the trial court abused its discretion when it determined that C.S. was substantially impaired during the sexual conduct between Appellant and C.S. on January 10, 2017 because that was a finding for the jury to make.

{¶36} A close reading of the trial court's decision and entry denying Appellant's Motion to Permit the Introduction of Specific Instances of the Victim's Conduct reveals that it did *not* make any "findings" regarding the alleged rape on January 10, 2017. Rather, the court relied on the *allegations* in the rape charges that C.S. was substantially impaired at the time. In his

reply brief, Appellant argues "the fact that the indictment alleged substantial impairment should not be taken as fact by the trial court when making its rape shield ruling."

{¶37} One of the purposes of R.C. 2907.02(D) is to "exclude evidence that is unduly inflammatory and prejudicial, while being only marginally probative." *Williams*, 21 Ohio St.3d 33, 39, 487 N.E.2d 560 (1986). In order to determine the probative value of proffered evidence under R.C. 2907.02(D), a court must compare "evidence of [the victim's] past sexual conduct" * * * "to a material element of the *charged crime*." (Emphasis added.) *State v. Williams*, 16 Ohio App.3d 484, 491, 477 N.E.2d 221, 228 (1984). To permit a court to independently explore the facts of the allegations would effectively allow the court to alter the offense charged by the State, as well as interfere with the court's rape-shield analysis, which is to determine whether proffered evidence is probative of an issue related to the charged offense.

{¶38} Comparing the proffered past sexual activity to the alleged offense is precisely what the trial court did in this case. The element of the charged offense at issue, as raised by Appellant, was whether the alleged rape of C.S. on January 10, 2017 was consensual. Appellant purported that the proffered December 2016 sexual activity between him and C.S. was

consensual. However, in conducting the rape-shield analysis, the trial court found that the December 2016 sexual activity was not consensual. Therefore, the court concluded that the probative value of the December 2016 sexual activity pertaining to whether C.S. consented to the sexual activity on January 10, 2017 was outweighed by its prejudicial and inflammatory nature.

{¶39} Here, the rape-shield analysis, and in particular comparing the prior sexual activity to the pending alleged charges, in no way encroaches upon the jury's fact-finding duties, wherein they found Appellant guilty of both counts of rape. Therefore, we find that Appellant's second argument, that the trial judge made a factual determination that C.S. was substantially impaired during the January 10, 2017 sexual activity thereby encroaching upon the jury's obligation to determine factual issues, is also without merit.

{¶40} The trial court's decision and entry denying admission of December 2016 sexual activity considered both counts of rape alleged. Moreover, the trial court relied on the allegations that C.S. was substantially impaired during the January 10, 2017 sexual activity in undertaking the rape-shield analysis. And ultimately, the trial court determined that because the December 2016 sexual activity was not consensual, its probative value was outweighed by its inflammatory and prejudicial nature. Pursuant to

these considerations, we find that the trial court's decision and entry was not unreasonable, arbitrary, or unconscionable.  Accordingly, we overrule Appellant's first assignment of error.

## ASSIGNMENT OF ERROR II

{¶41} In his second assignment of error, Appellant asserts that he received ineffective assistance of counsel, in violation of the Sixth Amendment to the United States Constitution, when his trial counsel failed to object to the presence of more than one victim advocate during the trial.

{¶42} To establish constitutionally ineffective assistance of counsel, a defendant must show (1) that his counsel's performance was deficient and (2) that the deficient performance prejudiced the defense and deprived him of a fair trial.  *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984).  " 'In order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation.  To show prejudice, the defendant must show a reasonable probability that, but for counsel's error, the result of the proceeding would have been different.' "  *State v. Barnhart*, 4th Dist. Meigs Nos. 18CA8 and 18CA15,  2019-Ohio-1184, ¶ 64, quoting *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 95 (citations omitted).

**{¶43}** "A properly licensed attorney is presumed to execute his duties in an ethical and competent manner." *State v. Taylor*, 4th Dist. Washington No. 07CA11, 2008-Ohio-482, ¶ 10, citing *State v. Smith*, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). "In order to overcome this presumption, the petitioner must submit sufficient operative facts or evidentiary documents that demonstrate that the petitioner was prejudiced by the ineffective assistance." *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 62, citing *State v. Davis*, 133 Ohio App.3d 511, 516, 728 N.E.2d 1111 (8th Dist. 1999). Therefore, a defendant bears the burden to show ineffectiveness by demonstrating that but for counsel's errors there is a reasonable probability that the outcome of the case would have been different. *Id.*

**{¶44}** "A trial counsel's failure to object is generally viewed as trial strategy and does not establish ineffective assistance." *State v. Teets*, 4th Dist. Pickaway No. 16CA3, 2017-Ohio-7372, ¶ 71, citing *State v. Roby*, 3rd Dist. Putnam No. 12-09-09, 2010-Ohio-1498, ¶ 44, *State v. Eason*, 7th Dist. Belmont No. 02 BE 41, 2003-Ohio-6279, ¶ 133. And " ' "[a] competent trial attorney might well eschew objecting * * * in order to minimize jury attention to the damaging material." ' " *State v. Hill*, 4th Dist. Athens No. 16CA3, 2018-Ohio-67, 104 N.E.3d 794, ¶ 45, citing *State v. Topping,* 4th

Dist. Lawrence No. 11CA6, 2012-Ohio-5617, ¶ 80, quoting *State v. Mundt*,

115 Ohio St.3d 22, 2007-Ohio-4836, 873 N.E.2d 828, ¶ 90; quoting *United*

*States v. Payne*, 741 F.2d 887, 891 (C.A.7 1984).

{¶45} Citing R.C. 2930.09, Appellant asserts that not only did C.S.

not ask leave of the court to have a support person attend the trial, but had

four or five support persons attend the trial.

{¶46} In pertinent part, R.C. 2930.09 provides:

> "At any stage of the case at which the victim is present,
>
> the court, at the victim's request, *shall permit* the victim to be
>
> accompanied by *an individual* to provide support to the
>
> victim *unless* the *court determines that exclusion* of the
>
> individual *is necessary to protect the defendant's* or alleged
>
> juvenile offender's *right to a fair trial* or to a fair delinquency
>
> proceeding." (Emphasis added.)

{¶47} Although the statute says "an individual," we can find no cases

in Ohio that cite defense counsel's failure to object to more than one support

person attending a trial as a basis for a deficient representation claim.

{¶48} Appellant cites three cases from foreign jurisdictions in support

of his argument. *See Norris v. Risley*, 918 F.2d 828 (9th Cir. 2009)

(advocates wore "Women Against Rape" buttons), *State v. Franklin*, 327

S.E.2d 449 (W.Va.1985) (advocates against drunk driving wore MADD buttons), *Long v. State*, 151 So.3d 498 (Fla.App.2014) (men wore jackets embroidered with "Biker's Against Child Abuse"). These cases involved advocates who were present in the courtroom during the trial and supported the victim by wearing a visible button or patch containing a message that unequivocally supported the victim. There is no evidence, let alone an allegation, that the support persons in this case possessed any type of similar item that expressed their support for C.S. and/or against Appellant. For that reason, we find that the cases cited by Appellant are inapposite.

{¶49} Additionally, even if trial counsel deemed that the presence of more than one support person could have been harmful, it could have been sound trial strategy to have declined to object to avoid calling unnecessary attention to the support persons present and possibly invoking sympathy for the victim. *Hill*, 4th Dist. Athens No. 16CA3, 2018-Ohio-67, 104 N.E.3d 794, ¶ 45.

{¶50} Finally, Appellant has failed to show that, but for the absence of the excess support persons, there was a reasonable probability that the outcome of Appellant's trial would have been different.

{¶51} Accordingly, we find that Appellant's counsel's performance was not deficient for failing to object to the presence of multiple support

persons at C.S.'s trial, and we find that even if failing to object was deficient representation, Appellant failed to prove prejudice. Therefore, we overrule his second assignment of error.

## ASSIGNMENT OF ERROR III

{¶52} In his third assignment of error, Appellant argues that his eleven-year-maximum sentence is clearly and convincingly unsupported by the record. Appellant argues that he was a fifth-year college student with no prior criminal record. He also argues that he took responsibility and expressed remorse for his actions. He argues the recidivism factors in R.C. 2929.12(D) and (E) are not present in the record. Therefore, he argues, the minimum sentence required to protect the public is not the eleven-year sentence the trial judge imposed. Consequently, Appellant argues, there is clear and convincing evidence that the record does not support an eleven-year sentence so his sentence should be vacated and the case remanded for resentencing.

{¶53} "When reviewing felony sentences, we apply the standard of review set forth in R.C. 2953.08(G)(2)." *State v. Mullins*, 4th Dist. Scioto No. 15CA3716, 2016-Ohio-5486, ¶ 25, citing *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 22. Under R.C. 2953.08(G)(2) an appellate court may increase, reduce, or otherwise modify

a sentence if it * * * *finds either* of the following: (a) That the *record does*

*not support the sentencing court's findings* under division (B) or (D) of

section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division

(I) of section 2929.20 of the Revised Code*, whichever, if any, is relevant; (b)

That *the sentence is otherwise contrary to law*. (Emphasis added.)  *Id*. at

¶ 25.

{¶54} However, "some sentences do not require the findings that R.C.

2953.08(G) specifically addresses," but it is still "fully consistent" for a

court of appeals "to review those sentences under R.C. 2929.11 and

2929.12" and a reviewing court "may vacate or modify the sentence that is

clearly and convincing not supported by the record, or is contrary to law."

*Mullins*, 4th Dist. Scioto No. 15CA3716, 2016-Ohio-5486, ¶ 23.

{¶55} R.C. 2929.11 addresses the overriding purposes of felony

sentencing, which "are to protect the public and punish the offender." *State*

*v. Graham*, 4th Dist. Adams No. 17CA1046, 2018-Ohio-1277, ¶ 20.  Under

R.C. 2929.11, "[t]he sentence must be commensurate with and not

demeaning to the seriousness of the offender's conduct and its impact upon

the victim, and consistent with sentences imposed for similar crimes

committed by similar offenders." *Id*.  "R.C. 2929.12 specifically provides

that in exercising its discretion, a trial court must consider certain factors

that make the offense more or less serious and that indicate whether the

offender is more or less likely to commit future offenses * * *." *Id.*

**{¶56}** Clear and convincing evidence is "[t]he measure or degree of

proof that will produce in the mind of the trier of fact a firm belief or

conviction as to the allegations sought to be established." *In re I.M.*, 4th

Dist. Athens No. 10CA35, 2011-Ohio-560, ¶ 6.

<u>Maximum Sentences</u>

**{¶57}** "Maximum sentences do not require specific findings

referenced in R.C. 2953.08(G)(2)(a), thus [on review] our focus is * * * to

determine if the sentence is otherwise contrary to law" by determining

whether the trial court considered the appropriate statutory factors when

imposing such a sentence. *Mullins*, 4th Dist. Scioto No. 15CA3716, 2016-

Ohio-5486, ¶ 26, citing *State v. Farnese,* 4th Dist. Washington No. 15CA11,

2015-Ohio-3533, ¶ 5, *State v. Lister,* 4th Dist. Pickaway No. 13CA15, 2014-

Ohio-1405, ¶ 10, *see also State v. Milner*, 4th Dist. Washington No. 15CA3,

2015-Ohio-5005, ¶ 14.  Absent a violation of "other applicable rules and

statutes," a maximum sentence is not contrary to law if the trial court has

considered the factors in R.C. 2929.11 and R.C. 2929.12.  *Mullins*, at ¶ 27,

*see also Milner*, 4th Dist. Washington No. 15CA3, 2015-Ohio-5005, ¶ 14

(same).  Therefore, prior to our analysis, we note that contrary to Appellant's

assertion that his maximum sentence should be reviewed to determine whether it is "clearly and convincingly unsupported by the *record*," our precedent directs us to determine whether his maximum sentence was "clearly and convincing contrary to *law*." *Id.* (Emphasis added)

{¶58} During the sentencing hearing, the trial court considered in detail many factors in sentencing Appellant. For example, the trial judge stated that he considered the "record, oral statements, any victim impact statement, as well as the principals and purposes of sentencing under R.C. 2929.11, and has balanced the seriousness and recidivism factors under R.C. 2929.12." In considering whether the offense "was more serious or not" under R.C. 2929.12(B), the judge found that C.S.'s "injury was exacerbated by [her] inability uh, to consent to the physical sexual assault she was subjected to due to the fact that she consumed a large amount of alcoholic beverage on her twenty-first birthday." The judge also found that C.S. suffered "serious physical, and psychological harm."

{¶59} The judge further found that the friendship between Appellant and C.S. "facilitated uh, the offense and gave him the opportunity to get close to her in a manner in which he did and he probably otherwise wouldn't have been able to get as close had not that relationship uh, been a factor."

{¶60} Therefore, the court concluded "[t]he Court has considered all the relevant statutory factors so after all is said and done uh, the Court believes that this is just as heinous as any other if [not] more so because of the relationship that they had that was violated.  The Court orders uh, [Appellant] to serve a term of eleven years in prison."

{¶61} Accordingly, we find that the trial court considered the necessary factors in R.C. 2929.11 and 2929.12 to impose a maximum sentence, subject to our analysis of R.C. 2929.11(B) below.

Consistent Sentences

{¶62} Appellant also argues that his sentence is not consistent with other similar offenders in violation of R.C. 2929.11(B), citing *State v. Anglin*, 12th Dist. Butler No. CA2018-03-058, 2019-Ohio-588, ¶ 7; *State v. Shivers*, 8th Dist. Cuyahoga No. 106601, 2018-Ohio-5174, ¶ 5; *State v. Gross*, 12th Dist. Preble No. CA2018-01-001, 2018-Ohio-4557, ¶ 9; *State v. Keller*, 8th Dist. Cuyahoga No. 106196, 2018-Ohio-4107, ¶ 16; *State v. Canterbury*, 4th Dist. Athens No. CA2018-03-058, 2019-Ohio-588, ¶ 7. Appellant alleges that these rape cases are factually similar to the instant case, but in each of them the defendant received a lesser prison term. Therefore, he asserts that his is not consistent with sentences imposed for similar crimes committed by similar offenders.

{¶63} R.C. 2929.11(B) states in relevant part that "[a] sentence imposed for a felony shall be * * * consistent with sentences imposed for similar crimes committed by similar offenders." "[T]he General Assembly has not identified the means by which the courts should attain this goal." *State v. Wilson,* Washington App. No. 04CA18, 2005-Ohio-830, ¶ 41. But we have held that "[a]n offender cannot demonstrate inconsistency merely by supplying a list of cases where other defendants in other cases received prison sentences that differed from his." *State v. Ward*, 4th Dist. Meigs No. No. 07CA9, 2008-Ohio-2222, ¶ 16, quoting *State v. Wilson,* at ¶ 41. "Instead, our review centers around the particular facts and circumstances of the case to determine whether the trial court considered the proper factors and imposed a sentence that is not grossly inconsistent with those received by substantially similar offenders." *State v. Keyes*, 4th Dist. Meigs No. 5CA16, 2006-Ohio-5032, ¶ 15, citing *State v. Coburn,* Athens App. No. 03CA774, 2004-Ohio-2997, at ¶ 17. "Consistency does not require uniformity. It simply demands application of the same factors in every case to reach a sentence that is rational and predictable." *Id.*

{¶64} Moreover, any [consistency-in-sentencing] review [under R.C. 2929.11(B)] must begin with the defendant producing a record for the trial court's consideration before the final sentence is imposed. As courts have

long concluded, a "defendant *must raise* [the *consistency-in-sentencing*] *issue* before the *trial court* and present some evidence, however minimal, in order to provide a starting point for analysis and to preserve the issue for appeal." *State v. Adams*, 4th Dist. Lawrence No. 15CA2, 2016-Ohio-7772, 84 N.E.3d 155, ¶ 46, citing *State v. Montanez-Roldon,* 8th Dist. Cuyahoga No. 103509, 2016-Ohio-3062, 2016 WL 2941098; *State v. Spock,* 8th Dist. Cuyahoga No. 99950, 2014-Ohio-606, ¶ 37, citing *State v. Lang,* 8th Dist. Cuyahoga No. 92099, 2010-Ohio-433; *State v. Picha,* 8th Dist. Cuyahoga No. 102506, 2015-Ohio-4380, ¶ 9.

{¶65} Therefore, because we find that Appellant has not proven by clear and convincing evidence that his sentence is contrary to law, we overrule his third assignment of error.

## CONCLUSION

{¶66} Having overruled Appellant's three assignments of error, we affirm the judgment of the trial court.

**JUDGMENT AFFIRMED.**

## <u>JUDGMENT ENTRY</u>

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court to carry this judgment into execution.

<u>IF</u> A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Abele, J.:  Concur in Judgment and Opinion.

For the Court,


BY:  _____
Matthew W. McFarland, Judge

**NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**